STATE of Missouri,
Plaintiff–Respondent,

v.

Charles Anthony GIFFORD,
Defendant–Appellant.

No. 15254.

Missouri Court of Appeals,
Southern District,
Division One.

April 26, 1988.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Melinda K. Pendergraph, Columbia, for defendant-appellant.

GREENE, Presiding Judge.

Charles Anthony Gifford was charged in a two-count information with burglary in the first degree, § 569.160,[1] and murder in the second degree, § 565.021.1(2). A jury found him guilty of the burglary charge, and not guilty of the murder charge. Gifford was sentenced to 10 years' imprisonment as a result of the burglary conviction.

In his appeal, Gifford contends the trial court erred in refusing to give an instruction offered by him on the lesser included offense of second degree burglary, and further erred in submitting the first degree burglary charge to the jury because there was not sufficient evidence introduced to justify submission of the charge. We affirm.

Evidence relevant to this appeal that was before the jury was as follows. In the early morning hours of January 31, 1987, Gifford and an accomplice, Jimmy Lee Stevens, Jr. went to the "Express Food Store," a convenience store in Carterville, Missouri, with the purpose of committing a burglary. The store was closed at midnight, and no persons remained in the building. Gifford and Stevens wore gloves, and Stevens carried a screwdriver to be used as a burglar

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

tool. They pried open the rear door of the store, using the screwdriver to do so. After entering the building, Gifford and Stevens pried open a video machine and removed approximately $10 in quarters from its cash box.

Bobby Ray White, Chief of Police of Carterville, was patrolling the area and noticed the rear door of the food store was open. White entered the store, and saw an individual, later identified as Gifford, standing inside the storage room. White drew his .357 magnum pistol, and, after identifying himself as a police officer, ordered Gifford to come out. Gifford walked out of the storage room, and raised his hands in surrender. According to White's testimony, Stevens then came out of the storage room with a screwdriver in his hand, and said, "No, Bob. I'm not going to jail." Stevens and White struggled and, according to White, Stevens attempted to stab White with the screwdriver. During the struggle, White fatally shot Stevens in the chest.

White's testimony was contradicted by a written statement, which was read in evidence, that Gifford had given law enforcement officers after he was taken into custody. In that statement, Gifford said that Stevens had dropped the screwdriver in the storage room, and that after Stevens was shot, White went in the storage room, picked up the screwdriver, and threw it on the floor near where Stevens was lying. Gifford admitted in the statement that Stevens did say "something" to White, and that Stevens and White were "struggling a little bit" prior to Stevens being shot. While removing some of Stevens' clothing in an attempt to give him emergency aid on the way to the hospital, paramedics found a large screwdriver inside his shirt. Gifford was handcuffed and taken into custody. Based on this evidence, the murder and burglary charges were filed.

At the close of the state's evidence, Gifford's attorney filed motions for judgment of acquittal on both charges, which motions were overruled. Gifford offered no evidence. At this point of the trial, the court held an instruction conference in which Gif-

ford's attorney submitted several instructions for the court's consideration, one of which was instruction No. C, which read as follows:

If you do not find the defendant guilty of burglary in the first degree as submitted in Instruction No. _____, you must consider whether he is guilty of burglary in the second degree under this instruction.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 31, 1987, in the County of Jasper, State of Missouri, the defendant knowingly entered unlawfully in a building located on West Main Street, Carterville, Missouri, known as Express Food Store, and owned by Mike Winn, and

Second, that defendant did so for the purpose of committing the crime of stealing therein,

then you will find the defendant guilty under Count I of burglary in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion.

If you do find the defendant guilty under Count I of burglary in the second degree, you will assess and declare one of the following punishments:

1. Imprisonment for a term of years fixed by you, but not less than one year and not to exceed seven years.

2. Imprisonment in the county jail for a term fixed by you, but not to exceed one year.

3. Imprisonment for a term of years fixed by you, but not less than one year

and not to exceed seven years and in addition a fine, the amount to be determined by the Court.

4. Imprisonment in the county jail for a term fixed by you, but not to exceed one year and in addition a fine, the amount to be determined by the Court.

The maximum fine which the Court may impose is $5,000.00.

The trial judge indicated he would give the instruction.

However, Gifford's attorney, after consulting with his client, withdrew the instruction. In his brief filed here, Gifford's attorney explained his actions as "a strategic decision." The trial court granted the request to withdraw the instruction, and indicated to the parties which instructions he would give, which included verdict directing instructions on first degree burglary and second degree murder.

The trial judge asked, "Do either counsel wish to offer anything else?" Both attorneys responded that they did not. Gifford, the judge, the attorneys, and the jury then returned to the courtroom, and the judge read to the jury the instructions that had been approved by the trial court. At that point in time, the following discussion took place between Gifford's attorney and the trial judge:

MR. MAPLES: Judge, I've got a problem I think I should bring to the Court's attention. In reflecting, I had earlier suggested this burglary second degree instruction and withdrawn it. It appears to me that that was an error. I don't know whether the Court has any discretion in considering that at this point or not, Judge. But I think that perhaps that instruction should have been submitted in order to properly protect Mr. Gifford's rights in this case. I apologize to the Court for the time of this matter, but there's no better time left than now to bring it to the Court's attention. Whatever the Court can do on it, I don't know, but I'd just submit that instruction.

THE COURT: I think under the rules, of course, it's got to be offered at the proper time and in the proper manner, and at this stage I've already read the instructions to the jury and the State's prepared for opening argument. I believe it would not be timely.

MR. MAPLES: Could we at least show it as offered at this point, Judge?

THE COURT: I'll show it as Instruction Number C, and I'll show that it's refused for the reason that it's not timely offered.

MR. MAPLES: Thank you, Your Honor.

The attorneys then made their closing arguments, and after deliberating, the jury returned a verdict of guilty on the first degree burglary charge, and not guilty on the second degree murder charge.

In his motion for new trial, Gifford's attorney raised the issue of the trial court's refusal to give instruction No. C. After hearing arguments from the attorneys on the issue, the trial judge observed:

THE COURT: .... At the instruction conference defense counsel, after conferring with the defendant, elected to not offer the second degree burglary instruction. The Court assumed that was trial strategy. I assume you probably felt you had a better chance of getting a not guilty verdict on that count without having that instruction in there. After the Court had read the instructions and had called upon the prosecutor for his argument, defense counsel approached the bench and asked that that instruction be given. At that point it was not just a matter of adding another instruction. The giving of that instruction involved changes in several—some of the other instructions. If I gave that instruction, other instructions which I had already read to the jury then would have had to have been re-drafted. The jury had been read the complete instructions. I felt it would be very confusing to them then to go back and tell them that part of the instructions that I read to them are not to be considered and give them different instructions. In any event, as Mr. Crawford points out, we did have an instructions conference. The Court did make a record. I read the instructions that had

been approved to be given. I also mentioned any instructions that had been offered and refused and asked counsel if there were any further instructions that had been offered and refused and there were none. So I think that the prosecutor is correct that there has to be a cutting-off point where further instructions cannot be offered and given, and I think we'd reached that in this trial.

The trial court then overruled the motion, and sentenced Gifford. This appeal followed.

Section 569.160 provides that a person commits the crime of first degree burglary "if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:

(1) Is armed with explosives or a deadly weapon; or

(2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime."

The state's verdict directing instruction on the first degree burglary charge instructed the jury that if they found from the evidence beyond a reasonable doubt that Gifford knowingly and unlawfully entered the Express Food Store for the purpose of committing the crime of stealing, and that while Gifford was in the building, Stevens, who was a participant with Gifford in the offense, threatened immediate physical injury to White, who was not a participant in the crime, then they were to find Gifford guilty of burglary in the first degree.

In his first point relied on in this appeal, Gifford argues that since the state chose to introduce his statement in its case in chief, in which statement Gifford said Stevens had thrown a screwdriver down before he came out of the storeroom, this amounted to evidence that Stevens did not threaten immediate physical injury to White, and, therefore, Gifford was entitled to a second degree burglary instruction, which only required proof of unlawful entry for the purpose of committing the crime of stealing, and which carried a much lighter penalty if convicted than did the first degree burglary charge.

■ Even if we were to assume, which we do not, that Gifford's statement to the effect that Stevens had thrown down the screwdriver before he came out of the storeroom was evidence that Stevens did not threaten White with immediate physical injury, and for such reason was entitled to a second degree burglary instruction as a lesser included offense, since such statement was ' "conflicting evidence relating to elements of the crime charged," ' *State v. Wiggins*, 640 S.W.2d 161, 162 (Mo.App. 1982), it is our opinion that Gifford waived any right he might have had for the submission of a lesser included offense instruction.

■ It is the law of the state of Missouri that a defendant may not complain about a trial court's failure to give a lesser included offense instruction unless the defendant has specifically requested it. The reason for this rule is that it allows a trial to proceed to its conclusion in an orderly manner, and to insure that the trial judge will be ruling on requests for instructions that are specifically called to his attention. *State v. Olson*, 636 S.W.2d 318, 322–23 (Mo. banc 1982).[2] The specific issue is at what point in time must defense counsel make his specific request for such an instruction.

■ We have not been referred to any case in point by counsel for either party, and have found none in our independent

---

**2.** That portion of *State v. Olson*, supra, which states "[A] defendant may not complain about a court's failure to give a lesser offense instruction unless the defendant requests it specifically, except in the homicide cases" was modified by § 565.025.3 RSMo 1986, which states: "No instruction on a lesser included offense shall be submitted unless requested by one of the parties or the court," thus removing the homicide exception. MAI–CR3d 313.00 Supplemental Notes on Use.

research. However, it seems to be only common sense to hold that such requests must come before or at the instruction conference, which takes place after all of the evidence is in, and before any verdict directing instructions are read to the jury. In that way, the trial court, in calm deliberation, has the opportunity to consider what instructions should be given in light of the evidence that has just been heard. To us, that is the true meaning of *Olson*. To hold otherwise would allow defense counsel, after all of the instructions had been read to the jury, to offer any conceivable type of instruction which, even if it had a semblance of legitimacy, would result in the trial court withdrawing all instructions it had read to the jury, holding a second instruction conference, and conceivably renumbering and redrawing instructions previously agreed to by all parties. This would throw a large spike into the gears of the wheel of justice, and would leave juries hopelessly confused in their role as factfinders. It would also permit a defendant to sidestep the policy announced in *Olson* by offering lesser included offense instructions any time he felt like it.

In an attempt to escape the mandate of MAI–CR3d 304.11(G) and *State v. Olson,* supra, Gifford claims that such rule and case violate his constitutional right to due process, citing *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 3159–60, 82 L.Ed. 2d 340 (1984), and *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982). Both of those cases are capital murder cases and have no application on their facts to the case at bar. The trial court did not abuse its discretion in refusing to permit Gifford to submit instruction No. C.

 We have difficulty in comprehending the reasoning alleged to support Gifford's assertion in his second point of claimed error, which is that the state did not make a submissible case on its first degree burglary charge. The state elected to charge Gifford with the crime of first degree burglary, charging the elements of § 569.160, which statute defines first degree burglary, stating "[a] person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime: .... (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime...." Gifford concedes that the state introduced evidence from which the jury could find, beyond a reasonable doubt, that Gifford and Stevens unlawfully entered the convenience store for the purpose of committing the crime of stealing. However, he makes the somewhat astonishing observation that since White was a police officer, he was not a "person who is not a participant in the crime." Gifford cites no case in support of this theory, nor does he give any explanation as to why the factual and legal situation posed by the facts here is so novel that precedent is unavailing. For this reason alone, we could deny review of this point. *See, Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978).

However, we feel obligated to point out that it was the obvious intent of the legislature to invoke a stricter penalty than usual against any burglar or accomplice who used or threatened force against any person who was not a participant in the burglary. This rule was applied to any situation where the burglars were effecting entry, were in the building during commission of the burglary, or were fleeing from the scene.

To hold that a police officer investigating a possible burglary is not entitled to the same status as a casual bystander who might be threatened during the burglar's flight from the scene would be ludicrous, and contrary to legislative intent. The contention borders on the specious, and has no merit.

Judgment affirmed.

CROW, C.J., and HOLSTEIN, J., concur.