**J.A. TOBIN CONSTRUCTION COMPANY, Appellant,**

v.

**STATE HIGHWAY COMMISSION OF MISSOURI, Respondent.**

**No. WD 35102.**

Missouri Court of Appeals, Western District.

Sept. 4, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 30, 1984.

Application to Transfer Denied Dec. 18, 1984.

Michael P. Riley of Carson, Monaco, Coil, Riley & McMillin, P.C., Jefferson City, for appellant.

Bruce A. Ring, Chief Counsel, and Dan Pritchard, Asst. Counsel, Mo. Highway and Transp. Com'n, Jefferson City, for respondent.

Before TURNAGE, C.J., and SOMERVILLE and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury award of damages for breach of contract. The judgment is affirmed, but the case is remanded to the circuit court with directions to enter judgment in the sum of $301,653.62, plus pre-judgment interest in the sum of $198,890.43, for a total judgment of $500,544.05.

Before addressing the specific points presented on this appeal and for purposes of clarity, the parties are identified, and disposition of the cross-appeal is entered. Appellant is the Missouri Highway and Transportation Commission (hereinafter the Commission) and was the original defendant at trial. Tobin Construction Company (hereinafter Tobin) is respondent and was the original plaintiff at trial.

Subsequent to the original trial, Tobin caused to be issued an execution upon the judgment previously entered in its favor. The Commission filed a motion to quash that execution, contending that the Commission was not required to file a supersedeas bond to stay execution pending appeal. The trial court quashed the execution, and Tobin appealed from that quashal. That appeal came to this court and was assigned a separate case designation. By order of this court, the two cases were consolidated under the present case number. Because of the particular disposition of the original proceedings, the question posed by Tobin's cross-appeal becomes moot and is therefore neither reached nor decided.

Turning to the original appeal, the Commission presents twelve points, which in summary charge that the trial court erred (1) in denying the Commission's motion for directed verdict at the close of all the evidence, because the evidence did not establish for Tobin a cause of action ex contractu in the nature of a breach of warranty in that no positive representation by the Commission was made upon which Tobin could rely, (2) in denying the Commission's motion for directed verdict at the close of all the evidence, because the evidence did not establish for Tobin a cause of action for additional compensation, because a special provision of the contract does not allow for added expenses, (3) in denying the Commission's motion for directed verdict, because the contract specifically absolves the Commission for any delay and from any expenses incurred, (4) in denying the Commission's motion for directed verdict at the close of the evidence, because the evidence establishes any delay was caused by Tobin, (5) in denying the Commission's motion to strike the testimony of a subcontractor, because said subcontractor had no privity of contract with the Commission, (6) in giving the verdict-directing instruction for Tobin, because said instruction did not include all the necessary elements for a cause of action ex contractu in the nature of a breach of warranty, (7) in the giving of the burden of proof instruction, because said instruction did not contain the term "or defense" and the Commission submitted an affirmative defense, (8) in refusing the testimony of a certain defense witness and two tendered exhibits, (9) in allowing the testimony of a certain witness over the Commission's objection, because said testimony was irrelevant, (10) in overruling the Commission's motion for new trial and motion to correct the judgment entry, because the judgment is excessive in that the amount of prejudgment interest is incorrectly computed, (11) in admitting a certain exhibit and thus committing plain error, because said document is not a true copy and said fact was not disclosed to the Commission or the trial court, and (12) the Commission was, by the trial court, denied a fair trial because of the cumulative effect of all of the foregoing charged errors.

The pertinent facts as disclosed by the record are as follows. Tobin, along with other contractors, submitted its bid for a road project (designated 1–435–1(61)16 UA), which was to further the development of I–435 highway in Jackson County, Missouri. Tobin was the low bidder, and the contract was executed between the Commission and Tobin on July 12, 1968. The contract contained the following, which is referred to as Special Provision R:

"R. WORK RESTRICTION (KANSAS CITY POWER & LIGHT EASEMENT)

The Contractor is advised that the Commission and the Kansas City Power & Light Company have an agreement executed November 7, 1966, for the relocation of the utility facilities which are on the right of way for a distance of approximately 5500 feet in the vicinity of Truman Road extending from approximately Station 199 + 00 to approximately Station 254 + 00. The Kansas City Power & Light Company has taken bids for the necessary relocation work and has advised the Commission that such work would begin about May 1, 1968, and would be completed by October 1, 1968, and the company has been advised that this representation will appear in this contract. The Commission presently holds the necessary property rights under the overhead lines mentioned except for right of way tract No. 230, which is traversed by Skiles Avenue, where the fee ownership was in the Kansas City Power & Light Company subject to the agreement mentioned above. Skiles Avenue, being open, will permit the Contractor to traverse the right of way in this area until it is completely freed of the Kansas City Power & Light Company's facilities. The bidder will be furnished, upon request, with the most recent information with respect to the progress of this relocation and is advised that the Commission has directed that said relocation be completed by October 1, 1968.

Until such time as the right of way is completely freed of the existing facilities, the Contractor will be required to conduct the work withing (sic) the above defined limits in the manner necessary to insure that any facilities remaining in place at any time are properly protected from damage.

No additional compensation will be allowed for any delay, inconvenience, or added expense to the Contractor resulting from any restriction of operations which may be necessary to protect utility facilities prior to their removal from the right of way."

The foregoing provision became an issue at trial and remains an issue on this appeal.

The record shows that Tobin relied upon Special Provision R in preparing its bid and in planning and scheduling work on the project. The time for completion was 260 working days [1]. Also, as part of the contract, was the Missouri Standard Specifications 1961 Edition.

The particular work area called for in the contract was an area running generally north-south between 23rd Street and U.S. 24 Highway in Jackson County, Missouri. Within this overall distance, there existed for some 5500 feet utility power lines. These power lines were the high voltage transmission type and were located within the area designated as the road right-of-way. There is no dispute between the Commission and Tobin that these utility lines had to be relocated before Tobin could do work relative to the proposed road location at least within the 5,500 feet.

It is noted from the above provision that the Commission advised Tobin that the Commission had an agreement with the Kansas City Power and Light Company under the date of November 7, 1966 for the relocation of the utility lines, and that the work on relocation would commence about May 1, 1968 and be completed by October 1, 1968. The above provision also notes that the provision relative to relocation was to appear in the contract between the Commission and Tobin.

The utility lines were not relocated as of October 1, 1968, and relocation was not accomplished until May of 1969. The parties agree that as a result of the failure to relocate the utility lines, Tobin lost the equivalent of one-year's work on the

---

1. The time for such contracts is prescribed by a predeclared number of working days as opposed to a specified date for completion. A working day is defined within Paragraph 8.8.6 of the Missouri Standards Specifications (1961 Edition) as "any day when in the opinion of the engineer, soil and weather conditions are such as to permit any major operation of the project for six hours or over, unless other major conditions prevent the contractor's operations."

project and that Tobin suffered increased costs due to the delay. In support of its claim for additional compensation in the sum of $301,653.62, Tobin submitted detailed work sheets representing claimed labor costs caused by the delay. In addition, Tobin submitted a claim for increased costs to the Universal Bridge Company for increased bridge costs. Universal had a contract with Tobin but not the Commission. There is no dispute between the parties that increased bridge costs occurred due to the delay of relocating the utility lines. Tobin has not paid Universal for the increased costs, and the Commission has not paid Tobin for its claimed increased costs. Tobin complied with the requirement of submitting its claim to the Commission. Upon rejection of its claim, the present action was filed.

Tobin filed its petition and tried this action upon the theory that the Commission, pursuant to Special Provision R above, represented and warranted that the work on the utilities would commence about May 1, 1968 and would be completed by October 1, 1968. Tobin further claimed its reliance upon said representation and warranty in the preparation and submission of its bid.

Pursuant to a Notice to Proceed issued by the Commission, Tobin commenced work on the project about August 12, 1968.

The record reveals that the relocation of the utilities could not be and was not completed by October 1, 1968, because the Kansas City Power and Light Company did not possess title to the land to achieve relocation. Kansas City Power and Light was joined as an original defendant herein by Tobin. The Commission filed a cross-claim against Kansas City Power and Light. The circuit court entered summary judgment for Kansas City Power and Light against Tobin's claim and upon the Commission's cross-claim. An appeal from that judgment resulted in affirmance by this court. *J.A. Tobin Construction Company v. State Highway Commission of Missouri, Etc.*, 630 S.W.2d 258 (Mo.App.1982). Other motions for summary judgment filed by the Commission as to Tobin's claim were over-

ruled by the trial court. The Commission defended upon the theory that Special Provision R above was not a representation or a warranty that the utilities would be removed as of October 1, 1968. The Commission further denied Tobin's right to rely upon Special Provision R above as a representation or warranty that said utilities would be removed by October 1, 1968. The Commission further answered that Tobin's own delays occasioned its losses and that Tobin's recovery was limited to the commission's non-assessment of working days during the period from October 1, 1968 to May, 1969.

After a trial to a jury, the jury returned its verdict in the sum of $301,653.62, plus interest at 6%. The trial court entered judgment upon the verdict. This appeal followed the overruling of timely filed after-trial motions. Any additional facts are to be found where applicable within the discussion of the Commission's points on appeal infra.

Under its point (I), the Commission charges that the trial court erred by its denial of the Commission's motion for directed verdict. The argument of the Commission is based upon the denial that Special Provision R was either a representation or warranty which in turn would establish a breach of contract. The representation or warranty claimed by Tobin and denied by the Commission directly concerns the relocation of the utility lines by October 1, 1968. The Commission misconstrues the cause of action herein. The Commission attempts to argue this case as if it involved a breach of contract *in the nature of a breach of warranty* as found in the case of *Ideker, Inc. v. Missouri State Highway Commission*, 654 S.W.2d 617 (Mo.App. 1983). In *Ideker*, this court found from all the evidence that there existed a representation of a material fact which gave rise to an action ex contractu in the nature of a breach of warranty. This court in *Ideker* enumerated six necessary elements which must be found in order to make a claim under the unique and unusual circumstances therein involved. In the instant case,

the contract contains an express written warranty to relocate the utility lines (Special Provision R). The instant case thus is a strict breach of contract case and does not come within *Ideker.* Thus, the Commission's reliance upon *Ideker* is misplaced and the Commission's contention that Tobin failed to prove the six necessary elements is without merit.

It is obvious that the remainder of the Commission's argument within its point (I) is premised upon the Commission's assumption that *Ideker* applies and controls. It is equally obvious that the Commission's arguments within the Commission's additional points (II) and (III) are premised upon the Commission's assumption that *Ideker* applies and controls.

■ As noted above, since this court has ruled that the instant case does not come within *Ideker* and hence that case neither applies nor controls, it suffices to conclude at this juncture that the Commission's points (I), (II), and (III) are meritless and thus ruled against the Commission.

Under its point IV, the Commission charges that the trial court erred in denying the Commission's motion for a directed verdict at the close of all the evidence, because the evidence established that any delay occasioned to Tobin, and hence any additional expenses resulting therefrom, was caused by Tobin in not starting to work on another part of the project not restricted by the existing utility facilities.

The Commission argues that Tobin was notified to proceed on August 12, 1968 under the contract. The Commission refers to Special Provision B, which required Tobin to complete work on Potter Street prior to the closing of Independence Avenue. The Commission notes that there were no utility restrictions on Potter Street and that site was thus available from the August 12, 1968 date. The Commission further notes that work on Potter Street was not started until April, 1969. The Commission further notes that Tobin was not active on the Potter Street site for a six-and-one-half-week period, the summer of 1969, and that completion on Potter Street was not reached until September, 1971. Thus, the Commission notes that Tobin failed to take advantage of the Potter Street site between August 12, 1968 and April, 1969, and for the summer six-and-one-half-week period in 1969. Seventeen working days were charged to the six-and-one-half summer work period. The Commission further notes that there was also a site available for work and free from utility restriction at 12th Street, from August 12, 1968, but Tobin did not start work on the 12th Street location until May, 1969. The Commission thus concludes that the evidence establishes that Tobin was delayed by its own failure to coordinate available stages of work rather than from the failure to relocate the utility facilities. The Commission contends that the evidence was so clear and convincing on this point that no fact issue was left for determination by the jury and it was error to have denied the Commission's motion for directed verdict.

Tobin's response to this charged error is that it is presented for the first time on appeal. Tobin notes that the Commission did not present this point, either in its motion for directed verdict or in its motion for new trial. A review of both motions reveals that Tobin's assertion is only partially correct. The Commission's Motion for Directed Verdict, and the close of the evidence, contained the following language:

"6. The evidence affirmatively establishes that any actual delay to Plaintiff in its work on Project 1–435–1(61)16 UA resulted from the plaintiff not properly and satisfactorily coordinating the various stages of work under the contract which could have and should have been performed. Therefore, defendant, Commission is entitled to judgment as a matter of law."

■ In its motion for judgment N.O.V. or alternatively for a new trial, the Commission charges that the trial court erred in refusing to enter a directed verdict in the Commission's favor at the close of all the evidence, and pursuant to that general charge sets forth numerous specific reasons. While none of the specific reasons

includes any reference or claim of actual delay being occasioned by Tobin's failure to coordinate the various stages of the work, Tobin's contention must fail in light of the rulings found in *Welch v. Hesston Corp.*, 540 S.W.2d 127 (Mo.App.1976) and *Frisella v. Reserve Life Insurance Co. of Dallas,* 583 S.W.2d 728 (Mo.App.1979). The issue was properly preserved for review by this court.

The question thus arises, does the evidence so clearly and unequivocally establish that the delay to Tobin was occasioned by Tobin's failure to coordinate the various stages of work so that the Commission was entitled to a directed verdict?

■ The answer to the foregoing question is *no*. The evidence upon the record discloses that the Commission, by its own witnesses, established both delay and additional costs to Tobin as a direct result of the utilities not being removed. In addition, the evidence of the Commission discloses that there were other utilities (not the utilities involved in relocation as per Special Provision R) located within other areas of the job site. In addition, while a Commission witness did testify that Tobin could have done work in the 12th Street area, he also verified that grading in that area would have been impractical due to the existing utility facilities. Witnesses for the Commission testified that the delay of a year to Tobin on the project was occasioned by the failure of relocation of the utility facilities. In addition, there was introduced into evidence a letter written by the Chief Engineer of the Commission which did not agree entirely with Tobin's claim, but nonetheless acknowledged the delay occasioned by the failure to relocate the utilities. The evidence also discloses that other work on the project did commence after the August, 1968 notice to proceed. The conclusion which must be reached is that the evidence upon the record was not such as to support the Commission's motion for directed verdict. The trial court did not err in denying the Commission's motion for directed verdict at the close of the evidence, in overruling the Commission's mo-

tion for judgment N.O.V., or for a new trial in the alternative.

The Commission's point (4) is found to be meritless and is ruled against the Commission.

Under its point (5), the Commission charges that the trial court erred in denying the Commission's motion to strike the testimony of a subcontractor to Tobin. The Commission contends that such testimony was irrelevant in that the subcontractor had no privity of contract with the Commission, and Tobin was not damaged due to the subcontractor's claim being speculative and unliquidated.

The record discloses that Tobin had contracted with the Universal Bridge Company for bridge work on the project. The record also reveals that Tobin had paid Universal the sum due under the original contract between Tobin and Universal, but Tobin had not paid Universal for the losses incurred by Universal. In the claim submitted by Tobin to the Commission, the sum representing the claimed increase to Universal was included.

At trial, the President of Universal, Jaccard Matchette, testified to the additional costs encountered by Universal due to the failure of the relocation of the utility lines. The testimony of Mr. Matchette on direct examination was introduced without objection by the Commission. The direct examination was interrupted by a voir dire examination by the Commission. That voir dire consisted only of asking the witness if Universal had been paid by Tobin under the contract. The witness answered affirmatively. On cross-examination, the witness was asked if Universal had been paid by Tobin for the additional monies claimed due. This question brought a negative response. The Commission then moved to strike the entire testimony of this witness.

The Commission urges that the court erred under the ruling set forth in *Bernard McMenamy Contractors, Inc. v. Missouri State Highway Commission,* 582 S.W.2d 305 (Mo.App.1979). This court in *McMenamy* prohibited the inclusion of a subcontractor's costs within the claim of the con-

tractor as against the Commission. What the Commission herein urges is the interpretation of *McMenamy* that presentment or inclusion of a subcontractor's claim within the claim of the contractor is not permissible. This is not what was ruled in McMenamy. Rather, the subcontractor's claim as a part of the contractor's claim was denied because of the particular facts in that case. The court was careful to point out that no claim by the subcontractor as against the contractor had ever been made. In addition, the claimed costs by the subcontractor were based upon estimates. There was no offer into evidence of any contract between the contractor and the subcontractor. What this court said in *McMenamy* was that there existed no basis for recovery when a claim was based upon a difference between the estimated original cost and the final cost. At 316, this court went on to say:

"At best recovery would be based upon the difference between the amount received and the final cost. However, a more fundamental question is presented as to respondent's [contractor's] right to recover on their claim. Whether or not American [subcontractor] has a valid claim against respondent would depend upon the contract between those two parties. The contract was not offered in evidence. The claim of American against McMenamy is speculative and unliquidated. There has been no showing that McMenamy is liable to American and therefore there can be no basis for recovery by McMenamy against the commission on this element of the claim."

■ It is readily apparent, contrary to the Commission's contention herein and from a reading of *McMenamy*, that a contractor may include as part of its claim against the Commission the amount due a subcontractor, provided that portion of the contractor's claim is not based on speculation and is liquidated.

In the instant case, documentary evidence establishing the monies due Universal from Tobin was admitted without the objection of the Commission. In addition,

the evidence, both oral and documentary, was explicit and reflected actual out-of-pocket expenses by Universal. There was no speculation on the amount of Universal's claim against Tobin. The claim figures were defined and fixed, thus the sum claimed due was liquidated. Further, the testimony of witness Matchette clearly established that the claim by Universal as against Tobin was based upon the delay occasioned by the failure to relocate the utility lines.

■ Aside from the fact that the Commission's motion to strike the Machette testimony was untimely, the basis for that motion was insufficient to support the motion. The Commission's motion was premised upon a lack of privity between the Commission and Universal and that Tobin had not been damaged by Universal's claim. The trial court did not err in overruling the Commission's objection and denying the Commission's motion to strike the testimony. The Machette testimony was relevant to Tobin's claim against the Commission.

The Commission's point (5) is meritless and is ruled against the Commission.

Under its point (6), the Commission charges that the trial court erred in submitting Tobin's verdict-directing instruction because said instruction did not include all the necessary elements of its claim ex contractu in the nature of a breach of warranty.

The challenged instruction reads:

"INSTRUCTION NO. 6

Your verdict must be for plaintiff is you believe:

First, defendant did not clear the right of way of utility lines by October 1, 1968, as represented in the specifications in order to give the plaintiff a place to work, and

Second, because of such failure, defendant's contract obligations were not performed, and

Third, plaintiff was thereby damaged, unless you believe that plaintiff is not

entitled to recover by reason of Instruction No. 7."

In its argument, the Commission alleges that the foregoing instruction does not contain or follow the substantive law announced in *Ideker* relative to a cause of action ex contractu upon representation or warranty. As noted above, the instant case does not come within *Ideker, supra.* The Commission further argues that the challenged instruction is defective as it contains the "tail" on affirmative defenses. The Commission then concludes that the instruction, having been MAI 26.02, is not applicable because the terms of the contract are in dispute between the parties. The Commission refers to Notes on Use, MAI 26.02, which discloses, "This instruction is applicable only when there is no dispute concerning the terms of the agreement and the defendant's obligation to perform his agreement." The Commission posits that since it challenged the existence of any positive representation within Special Provision R and hence the contract, there existed a viable issue or dispute concerning the terms of the contract and hence MAI 26.02 is inapplicable.

Before considering Tobin's response, this court notes Tobin's assertion that the Commission did not object to the above instruction. The record reveals Tobin to be incorrect. The record also reveals an objection to the instruction as well as a specific challenge to same in the Commission's motion for judgment N.O.V. or in the alternative, a new trial. In response, Tobin argues that the Commission offered the following instruction in the nature of a third method converse instruction. That instruction reads as follows:

"INSTRUCTION NO. 7

Your verdict must be for defendant if you believe:

First, either:

The agreement did not contain a representation as to a date of removal for utilities restrictions or the agreement did not allow additional compensation to plaintiff for delay or added expense due to utility restriction or

The agreement allowed the consideration of the count of working days for any actual delay to plaintiff due to utility restrictions or completion of work under the agreement was delayed by the operations of plaintiff and

Second, plaintiff in any one or more of the respects submitted in Paragraph First, is not entitled to recover from defendant any damage sustained by plaintiff for utility restrictions."

■ Tobin goes on to assert the following: first, that both of the above instructions must be read together. Such is the rule, *Collier v. Roth*, 515 S.W.2d 829, 837 (Mo.App.1974). Tobin then argues the fact that the representation was a material fact was never in issue. The record bears this out as the Commission's own witnesses established this as a material fact. Additionally, Tobin points out that there was no dispute relative to the existence of the contract, inclusive of Special Provision R. Tobin concludes that the sole or remaining question was whether the Commission breached the contract.

■ This case is a case for breach of contract. M.A.I. 26.02 is precisely the instruction which was applicable herein. Further it is clear that when the two above instructions are read together all the issues were framed for the jury. The instructions set forth ultimate facts for the jury. It is the responsibility of this court to determine if the instructions as framed and submitted constituted prejudicial error materially affecting the merits of the action. If no prejudicial error arose, this court cannot set aside the jury verdict. *Collier, supra.*

The Commission suffered no prejudice by the submission of the verdict-directing instruction above. The Commission's point (6) is without merit and is ruled against the Commission.

Under its point (7), the Commission charges that the trial court erred in the submission of the burden of proof instruction because said instruction did not con-

tain the "tail" wording "or defense" as required since the Commission offered an affirmative defense.

■ The Commission is correct in its assertion that a burden of proof instruction is required. MAI 3.01, *Sears, Roebuck & Co. v. Peerless Products, Inc.*, 539 S.W.2d 768 (Mo.App.1976).

While contended in its brief by the mere conclusion that the Commission submitted an affirmative defense, and the same conclusion having been offered at the time of oral argument, this court is unable to ascertain that affirmative defense either from the briefs or upon the record. As near as this court can determine, it is the Commission's position that by submission of the above instruction (No. 7) and reference thereto in the previous instruction (No. 6), an affirmative defense was submitted, thus requiring the "or defense" term within the burden of proof instruction.

■ A reading of the above instruction reveals that it was not an affirmative defense instruction, but rather was a third method converse instruction. *Restaurant Industries, Inc. v. Lums, Inc.*, 495 S.W.2d 668, 670 (Mo.App.1973). It is obvious that the instruction is a converse to Tobin's verdict-directing instruction. As submitted under the particular facts and circumstances of the instant case, the burden of proof instruction complied with MAI 3.01 and the trial court did not err in not modifying that instruction to include the term "or defense." If the modification was thought necessary, the Commission could have moved for its modification. *Nicholls v. Kammerich*, 626 S.W.2d 653 (Mo.App. 1981).

The Commission's point (7) is meritless and is ruled against it.

Under its point (8), the Commission charges that the trial court erred in refusing the testimony of a Commission witness (and the offer of proof in support of his testimony), and conjunctively the refusal of two offered exhibits.

The argument of the Commission is an additional argument, contending that this court must interpret Special Provision R and the intent included within that part of the contract. During trial, the Commission, by the testimony of a district engineer, attempted to show another that another contractor had made inquiry about recent information regarding the relocation of the utility facilities. When the trial court sustained Tobin's objection to this testimony, the Commission made an offer of proof which was rejected. In addition, the Commission offered two documents (i.e., the contractor's letter of inquiry and the Commission's reply), both of which were rejected.

In its argument, the Commission assumes that Special Provision R requires, or it is mandatory upon, a contractor to make inquiry relative to the recent progress on relocation of the utility facilities. Special Provision R, as observed above, is not mandatory, but merely assures bidders that such information will be furnished if requested. The evidence revealed that at the time Tobin submitted its bid, Tobin did not even know of the above-referred to letters.

What the Commission sought to do, both by testimony and the two letters, was to modify Special Provision R by asserting it was required of a bidder (contractor) to make inquiry. If that conclusion be reached, the Commission further contends that the October 1, 1968 date is a mere estimated date and not a final or declared date of removal.

■ The wording and thus the intent of Special Provision R is clear. That provision does not include any requirement or mandate that a contractor make inquiry. Neither the offered testimony nor the offered letters were admissible, since neither provided extrinsic or collateral evidence in support of or in aid of ascertaining the intent of Special Provision R. Where the language and hence the intent of an agreement is unclear, the court can consider extrinsic facts in ascertaining the intent. *Harris v. Union Electric Co.*, 622 S.W.2d 239, 247 (Mo.App.1981). Because the lan-

guage and hence the intent of Special Provision R are plain and clear, the rule in *Harris* does not apply.

The trial court did not err in sustaining Tobin's objection, the rejection of the Commission's offer of proof, or the offered letters.

There is no merit to the Commission's point (8), and it is ruled against the Commission.

Under its point (9), the Commission charges that the trial court erred in overruling the Commission's objection to certain testimony, because said testimony was irrelevant.

The Commission charges error regarding testimony centered upon utilities located at U.S. 24 Highway on the project site. During Tobin's case in chief, a Tobin witness offered testimony relative to delay due to a utility at U.S. 24 Highway. The Commission objected upon the grounds said testimony was beyond the scope of Tobin's pleadings. The objection was sustained and the jury was instructed to disregard the testimony.

During the cross-examination of a Commission witness, Tobin questioned the witness about the utilities at U.S. 24 Highway. The Commission objected on the basis that the utility at U.S. 24 Highway had no relation to, nor was it within, Tobin's claim. The trial court overruled the objection "in light of the direct examination of this witness."

█ The record discloses that during direct examination, the witness was asked and responded to a series of questions designed to suggest to the jury that Tobin could have done other work on the project pending the removal of the utilities, and thus Tobin suffered no loss by the delay in removing the utilities. The trial court did not err in allowing Tobin to inquire of this same witness on cross-examination of the same subject matter. While Tobin was correctly prohibited from establishing this evidence by and through its case in chief, the trial court did not err in allowing Tobin to make inquiry after the Commission raised the issue in its case in chief. The trial court correctly ruled the Commission's objection and did not abuse its discretion. *Board of Public Buildings v. GMT Corp.*, 580 S.W.2d 519 (Mo.App.1979).

There is no merit to the Commission's point (9) and it is ruled against the Commission.

Under its point (10), the Commission charges that the trial court erred in denying the Commission's motion for new trial and motion to correct the judgment entry, because the judgment amount is excessive in that the total amount of prejudgment interest accrued on the actual damages is incorrectly computed.

The Commission points out that the trial court assessed the sum of $267,866.81 as prejudgment interest. The jury returned a verdict in the sum of $301,653.62 plus 6% interest. The trial court entered judgment for $301,653.62 plus interest from July 12, 1972 at 6% per annum, for a total sum of $267,866.81 in interest and for a total judgment sum of $569,520.43. The Commission first charges that the applicable interest total should have been only $198,890.43 rather than $267,866.81. The Commission then points out that neither Tobin requested the compounding of interest, nor did the jury's verdict allow for the compounding of interest.

█ Tobin responds to the Commission's contention by simply charging that the Commission did not timely raise the issue and hence the matter is not properly preserved or before this court. This court cannot agree with Tobin's assertion. The Commission's motion for judgment N.O.V. or in the alternative, while not a work of art, does nonetheless charge that the verdict was excessive. This court concludes that such charge was sufficient to have preserved the issue, and the Commission was within its rights to have subsequently moved to correct the judgment and to have that issue considered by this court.

█ In calculating a rate of interest at 6% per annum for a prescribed period of ten years, eleven months, and twenty-six

days, the sum of interest applicable to the verdict of $301,653.62 would be the sum of $198,890.43, thus providing a judgment total of $500,545.05.

The Commission is correct in its assertion that the prejudgment interest total was incorrectly calculated by the trial court, and the Commission's point (10) is sustained to reflect a corrected judgment total of $500,545.05.

Under its point (11), the Commission charges that the trial court committed plain error by admitting documentary evidence, because said document was not a true copy of a letter from the Commission to Tobin, and such fact was concealed from the Commission and the trial court.

This charged error centers upon trial exhibit number 17, which the record reveals was a portion of a letter written by the Chief Engineer of the Commission to Tobin.

Both parties point out and agree that no objection to the exhibit was made at trial. Tobin contends that the issue, not having been preserved, deprives this court of review. The Commission, while admitting the issue was not preserved, nonetheless argues the issue should be viewed under the plain error rule, Rule 84.13(c).

At trial, Tobin offered a portion of a letter. The omitted portion addressed settlement negotiation or an offer by the Commission to Tobin. The record shows that the letter was admitted under the Business Records Act, § 490.660 et seq., RSMo 1978 without objection.

In its post-trial motion N.O.V. or in the alternative, the Commission did not challenge the admission of the letter. The Commission subsequently filed a supplemental motion for new trial accompanied by an affidavit, asserting the questioned exhibit was not a true copy as contended by Tobin because of the omission of the paragraph relative to the settlement offer by the Commission. The Commission further asserts concealment by Tobin of this fact from the Commission and the trial court.

The record reflects that the Commission had ample opportunity to examine the original letter, which included the paragraph on settlement, and furthermore, since the letter in its original form originated with the Chief Engineer of the Commission, it would be ludicrous to conclude that the Commission did not know of the full content of the original letter.

It is further obvious from the entire record that the paragraph regarding settlement was not submitted to the jury to avoid error. Settlement negotiations are generally not admissible. *Owen v. Owen*, 642 S.W.2d 410 (Mo.App.1982). It cannot be concluded that the Commission suffered any prejudice by the admission of this exhibit in the form admitted. There was no manifest injustice or miscarriage of justice in the admission of the exhibit. In short, there was no error, plain or otherwise.

The Commission's point (11) is found to be meritless and is ruled against the Commission.

Under its final point (12), the Commission charges that it was, by the trial court, denied a fair trial as a result of the cumulative effect of all of the above charged errors.

Simply put, this court, with the exception of the incorrect computation of prejudgment interest under point (10) which does not serve as a basis for reversal of this cause, finds no error and thus concludes that there is no merit to the Commission's point (12) and the same is ruled against the Commission.

The judgment herein is affirmed, but this cause is remanded to the circuit court with directions to enter judgment to the favor of respondent in the total sum of $500,545.05. The costs herein are assessed against appellant.

All concur.