**DIERKER ASSOCIATES,
D.C., P.C., Plaintiff,**

**and**

**Carol A. Dierker, and Bernard F.
Dierker, Plaintiffs/Appellants,**

**v.**

**Jay D. GILLIS, Defendant/Respondent,**

**and**

**Jacquelyn R. Gillis, Defendant.**

**No. 62047.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 22, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1993.

Application to Transfer Denied
Sept. 28, 1993.

Frank Joseph Niesen, Jr., St. Louis, for plaintiffs-appellants.

Gregory S. Kessler, Daniel P. Card, II, Love, Lacks & Paule, Clayton, for defendant-respondent.

CRANE, Judge.

Defendant J.D. Gillis filed a counterclaim against plaintiffs seeking damages for breach of contract and fraudulent misrepresentation arising out of plaintiffs' failure to complete the purchase of his chiropractic practice and office equipment. The jury returned a verdict in his favor and awarded him $145,020 in damages on the breach of contract claim and $88,900 actual damages and $145,020 punitive damages on the fraudulent misrepresentation claim. The

trial court entered judgment in accordance with the verdicts, overruled plaintiffs' post-trial motions and granted Gillis prejudgment interest in the amount of $86,286.90 on the breach of contract claim. Plaintiffs appeal from this judgment. They challenge the submissibility of both claims, the instructions given on both claims, the reception of the verdicts, and the award of prejudgment interest. We affirm the judgment on the breach of contract claim, the award of prejudgment interest, and the finding of liability on the fraudulent misrepresentation claim, but set aside the damage award on the fraudulent misrepresentation claim and reverse and remand for new trial on the issue of damages on the fraudulent misrepresentation claim.

### FACTUAL BACKGROUND

Defendant Jay D. Gillis is a licensed doctor of chiropractic medicine. He owned and operated a chiropractic clinic in St. Louis County known as the Gillis Back Pain Clinic (Gillis Clinic). His wife, Jacquelyn Gillis, was an employee of the Gillis Clinic. Plaintiffs Bernard and Carol Dierker, husband and wife, are both doctors of chiropractic medicine.

The Gillis Clinic, located near the Dierkers' home, averaged 30–35 patients per day. In early 1985 Jay Gillis decided to sell the clinic and move to Louisiana, where his son had opened a clinic.

Gillis had known the Dierkers for several years. Carol Dierker had once mentioned to Gillis that he should let her know if he was ever interested in selling his clinic. During the spring of 1985 Gillis called Carol Dierker about possibly selling his practice, and she stopped by to discuss the matter.

Gillis also listed his clinic for sale with a broker. That listing agreement specifically excluded any sale to the Dierkers. On May 15, 1985 the broker submitted to Gillis an offer for $180,000. This offer had several contingencies and provided that Gillis would finance part of the purchase price. At her request, Gillis allowed Carol Dierker to review the offer.

Gillis and the Dierkers began negotiations for the sale of the Gillis Clinic, including both the practice and the equipment. On July 20, 1985 the parties signed a sales agreement which provided for a $135,000 purchase price for the clinic plus an additional amount for equipment. Closing was to occur on August 1, 1985. Carol Dierker anticipated spending between $150,000 and $160,000 for the entire clinic.

In preparation for the closing Gillis arranged to have the Dierkers assume his lease and to cancel or transfer his utilities and insurance. Gillis also advised patients that his clinic was being transferred to the Dierkers.

On August 1, 1985 Carol Dierker told Gillis that they did not yet have the money to close, but that they would have it within a few days. On August 3, 1985 the Dierkers gave Gillis a partial payment of $2,000. On Sunday, August 4, 1985, Gillis and the Dierkers signed a second sales agreement. That agreement provided for a purchase price of $135,000 for the clinic with "equipment value to be determined from July 12, 1985 review." This agreement provided that it was "contingent upon financing." Gillis simultaneously signed a bill of sale and gave it to the Dierkers. Gillis assigned the lease and delivered the keys and possession of the clinic to the Dierkers. There was evidence that the parties had agreed that the total purchase price, including equipment, was $152,020. The Dierkers assured Gillis that they had the money but, because it was Sunday, they could not get it from their account. They told Gillis that they would pay the balance in a day or two.

The next day, August 5, the Dierkers began operating the clinic and assumed full control of its operation. The Dierkers informed patients that it was their clinic and billed and collected for services rendered during August. The Dierkers also changed the locks on the clinic. Gillis left for Louisiana. His wife remained behind to collect the final payment and help with the transfer of the patients.

The Dierkers did not pay the balance of the purchase price. On August 9, 1985 the Dierkers gave Jacquelyn Gillis a signed

note stating their intent to close the deal and make final payment on August 14. The Dierkers failed to pay on that date, causing Gillis to return from Louisiana. On August 27 the Dierkers gave Gillis a check for $5,000 as a show of their good faith. The Dierkers operated the clinic until August 30, 1985. Gillis subsequently received notice that the August rent payment had not been made.

After another meeting in early September, the Dierkers wrote a check for $1,586 for the rent because they "were going to purchase the clinic." Several days later, Gillis was notified that the Dierkers had stopped payment on the check.

At trial Carol Dierker admitted that they had the money to complete the purchase. She also admitted that Gillis had fulfilled all his obligations under the agreement.

On September 25, 1985 the Dierkers entered into a contract to purchase a competing chiropractic clinic located across the street from the Gillis Clinic. This purchase was completed for cash on September 30, 1985.

Gillis was unable to sell his clinic. He attempted to run it himself by commuting from Louisiana on weekends. He also hired another chiropractor to run the clinic. These efforts were unsuccessful and the clinic eventually went out of business.

The Dierkers and plaintiff Dierker Associates, D.C., P.C., subsequently filed suit against Jay Gillis and Jacquelyn Gillis for breach of contract, quantum meruit, fraud and defamation. Jay Gillis filed a counterclaim against Bernard and Carol Dierker alleging breach of contract and fraudulent misrepresentation.

Trial began in the Circuit Court of St. Louis County on March 9, 1992. At the close of plaintiffs' case, the court granted Jacquelyn Gillis' motion for directed verdict on plaintiffs' claims against her. At the close of all the evidence, the court granted Jay Gillis' motion for directed verdict on plaintiffs' fraud and defamation counts. The trial court denied the Dierkers' oral motion for directed verdict.

The jury returned a verdict in favor of Gillis on the Dierkers' remaining counts and in favor of Gillis on his counterclaim. The jury awarded Gillis $145,020.00 on his breach of contract claim and $88,900.00 actual damages and $145,020.00 punitive damages on his fraudulent misrepresentation claim. The trial court entered judgment in accordance with the verdicts. After trial the court overruled the Dierkers' motion for judgment notwithstanding the verdict (judgment NOV) or, alternatively, for new trial and granted Gillis' motion for prejudgment interest in the amount of $86,286.90.

Plaintiffs Bernard Dierker and Carol Dierker appeal from this judgment. They raise ten points on appeal. For clarity, we have grouped their points into points relating to the breach of contract claim and points relating to the fraudulent misrepresentation claim. Hereinafter we shall refer to Bernard and Carol Dierker as "plaintiffs" and Jay Gillis as "defendant."

## I. POINTS OF ERROR RELATING TO BREACH OF CONTRACT CLAIM

Plaintiffs challenge the submissibility of the breach of contract claim and assert that the verdict director and the damage instruction were prejudicially erroneous. They also claim the trial court erred in awarding statutory prejudgment interest.

### A. SUBMISSIBILITY

Plaintiffs claim the trial court erred in submitting the breach of contract claim to the jury and in overruling their motion for judgment NOV on that claim. They assert that defendant failed to plead and prove satisfaction of the financing condition in the contract. They also assert no contract was formed because the August 4, 1985 agreement did not contain the purchase price for the equipment.

■ Before we reach the merits of this issue, we must address defendant's contention that any objection to submissibility has been waived. Plaintiffs made the following oral motion for a directed verdict at the close of the evidence: "Judge, I would like

to move at this time for a directed verdict in favor of Plaintiff on all counts in Plaintiff's petition and all counts in Defendant's counterclaim." Plaintiffs did not give specific reasons or grounds for the motion. Under such circumstances plaintiffs' motion for directed verdict failed to comply with the requirements of Rule 72.01(a) and was therefore insufficient to preserve anything for appellate review. *Kincaid Enters. v. Porter*, 812 S.W.2d 892, 895 (Mo. App.1991); *McRaven v. F–Stop Photo Labs*, 660 S.W.2d 459, 460–61 (Mo.App. 1983).

■ Plaintiffs subsequently raised specific grounds in their written motion for judgment NOV. Under the most recent decision of this court, a motion for judgment NOV is properly preserved only when a sufficient motion for directed verdict has been made at the close of all the evidence. *Estate of Gross v. Gross*, 840 S.W.2d 253, 256 (Mo.App.1992). Where an insufficient oral or written motion for directed verdict has been made, the post-verdict motion for judgment NOV is without basis and preserves nothing for review. *Id.* However, we may review this issue for plain error affecting substantial rights under Rule 84.-13(c) as plaintiffs requested in their reply brief.

■ A judgment NOV is a drastic action and should only be granted where reasonable and honest persons could not differ on a correct disposition of the case. *Marti v. Economy Fire & Casualty Co.*, 761 S.W.2d 254, 255 (Mo.App.1988). In reviewing the denial of a motion for judgment NOV, we view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party and disregard all evidence and inferences to the contrary to determine whether a submissible case was made. *Id.* at 255–56.

■ The August 4 agreement simply provided that it was "contingent on financing." It did not specify any terms or source for that financing. Under such circumstances "financing" means no more than "the act, process or instance of raising or providing funds." Webster's Third New International Dictionary 851 (4th ed. 1976).

■ If, as argued by plaintiffs, this clause was a condition precedent, defendant adequately pleaded and proved that the condition had been met. Defendant pleaded that plaintiffs advised him that "all conditions prerequisite to the closing were completed." There was substantial evidence that plaintiffs had the funds to close the contract. Carol Dierker testified that the plaintiffs had the money to complete the purchase. Gillis testified that Carol Dierker represented that the money would be paid within a few days of the scheduled closing. Gillis also testified that, on August 4, plaintiffs represented that they had the money to complete the purchase, could not withdraw it from their account that day because it was a Sunday, but would send the money within a few days. If financing was a condition precedent, this evidence supported submission of the case to the jury.

Plaintiffs next claim that no contract was formed because a price term was missing. We disagree.

■ In order to form an enforceable contract, an agreement must either fix a purchase price or provide a method to ascertain the price. *Allied Disposal v. Bob's Home Serv.*, 595 S.W.2d 417, 419 (Mo.App. 1980). There can be no contract unless there is a meeting of the minds. *Id.* at 419–20; *Shofler v. Jordan*, 284 S.W.2d 612, 614 (Mo.App.1955).

■ The August 4 written agreement provided that "equipment value" was part of the purchase price, which value was "to be determined from July 12, 1985 review." There was also substantial evidence that, at the time the August 4 agreement was executed, the parties had agreed on a price for the equipment. Two written documents, each signed by Jay Gillis and Bernard Dierker on August 1, 1985, listed values for the equipment and indicated a total sale price of $152,020 for the practice and equipment. Gillis' attorney testified that, from his discussions with both Carol Dierker and Jay Gillis prior to the signing of the

August 4 agreement, he understood "that the price of a hundred fifty-two thousand dollars had been arrived at." This evidence demonstrated that a meeting of the minds had occurred—the parties had agreed upon a total purchase price pursuant to the method prescribed in the August 4 agreement. The evidence supported submission of the case to the jury.

We find no error, plain or otherwise, in the trial court's failure to sustain plaintiffs' motion for judgment NOV on defendant's breach of contract claim.

## B. VERDICT DIRECTOR

Plaintiffs claim that the trial court prejudicially erred in giving Instruction 13, the verdict director on the breach of contract claim, because it did not specifically identify the "agreement" as the August 4 agreement. Instruction 13, based on MAI 26.06 [1981 Revision], read as follows:

Your verdict must be for Defendant Jay D. Gillis on his claim for breach of contract if you believe:

First, Plaintiffs Carol A. Dierker and Bernard F. Dierker entered into an Agreement to purchase the Gillis Back Pain Clinic and the items described therein whereby Plaintiffs agreed to pay and assume all operating obligations of the Gillis Back Pain Clinic and Defendant Jay D. Gillis agreed to convey the Gillis Back Pain Clinic to Plaintiffs, and

Second, Defendant Jay D. Gillis performed his agreement, and

Third, Plaintiffs failed to perform their agreement, and

Fourth, Defendant Jay D. Gillis was thereby damaged.

Plaintiffs made no objection to this instruction at trial, but preserved this issue for review by making a specific objection in their motion for new trial. Rule 73.03.

The failure to specifically identify the agreement by its date is not a deviation from MAI. MAI 26.06 uses the phrase "an agreement" without requiring evidentiary details such as the date. Ordinarily, since the focus is on the terms and existence of an agreement, its date would not be appro-

priate in an instruction. However, the MAI Committee Comments indicate that "it may be necessary to modify an instruction to submit an issue which is in dispute in your case but which usually is not disputed and thus is not submitted by the approved MAI." *Missouri Approved Jury Instructions*, "How to Use This Book," at XXXV (4th ed. 1991). Plaintiffs argue that the date is required in this case because there was more than one agreement in evidence. However, while there was more than one agreement in evidence, there was no dispute at trial over which agreement was at issue in the case. The August 4 agreement was clearly identified at trial as the agreement which was the subject matter of the dispute.

Furthermore, we will not reverse for instructional error unless prejudice is shown. *Frederick v. Witthaus*, 736 S.W.2d 520, 521 (Mo.App.1987). Plaintiffs failed to object at trial to Instruction 13. Failure to object at trial may be considered in assessing prejudicial effect. *Id.; Benson Optical Co. v. Floerchinger*, 810 S.W.2d 531, 535 (Mo.App.1991). A jury is not likely to be misled by an alleged defect in an instruction when the defect was not readily apparent to trial counsel. *Midwest Materials Co. v. Village Dev. Co.*, 806 S.W.2d 477, 494 (Mo.App.1991).

Further, we must consider this instruction together with any affirmative converse instruction given on the breach of contract claim. *Miller v. Ranson & Co.*, 407 S.W.2d 48, 53–54 (Mo.App.1966); *J.A. Tobin Const. Co. v. State Highway Comm'n*, 680 S.W.2d 183, 192 (Mo.App. 1984). Plaintiffs submitted, and the court gave, an affirmative converse instruction which read as follows:

Your verdict must be for Plaintiff if you believe that the parties in the agreement of August 4, 1985 did not agree to a price for a transfer of Gillis Back Pain Clinic and related items.

Your verdict must be for Plaintiffs if you believe that the parties in the agreement of August 4, 1985 did not agree

upon which items of the clinic were to be included in the sale.

This converse instruction required the jury to specifically focus on whether the August 4, 1985 agreement satisfied the requirements of a contract.

We may also look to counsel's argument to determine if the possibly erroneous instruction had likely prejudicial impact. *Fowler v. Park Corp.*, 673 S.W.2d 749, 756 (Mo. banc 1984); *Frederick*, 736 S.W.2d at 521. In closing argument Gillis' trial counsel advised the jury several times that although there was more than one agreement in evidence, the case only concerned the August 4 agreement.

There is no basis to find the jury was or could be confused by the absence of a date in Instruction 13. There is further no basis to find prejudice. The trial court did not prejudicially err in giving Instruction 13.

## C. ACTUAL DAMAGE INSTRUCTION

Plaintiffs next contend that the trial court erred in giving Instruction 15, a damage instruction patterned on MAI 4.01 [1980 Revision], because it allowed the jury to consider future damages. Plaintiffs argue that there was no pleading or evidence to support the submission of an instruction allowing future damages.

Instruction 15 read as follows:

If you find in favor of Defendant Jay D. Gillis, then you must award Defendant Jay D. Gillis such sum as you believe will fairly and justly compensate Defendant for any damages you believe he sustained and are [sic] reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence.

This instruction contains the elective language "and is reasonably certain to sustain in the future." MAI 4.01 [1980 Revision]. The MAI Notes on Use indicate this phrase "may be added if supported by the evidence."

At the jury instruction conference, plaintiffs' attorney objected to the use of the phrase "and is reasonably certain to sustain in the future" because future damages

had not been alleged or proven. The trial court overruled the objection, stating "I think there is a plethora of evidence in the case to sustain that."

We need not determine whether there was sufficient evidence of future damages to support the instruction because the jury clearly did not award future damages on the breach of contract claim. Its award was limited to the balance of the purchase price on the contract. During defendant's direct examination, the following exchange occurred:

Q. Are you asking this jury if they find in your favor on the breach of contract to award you the hundred and forty-five thousand dollars that you didn't get from the Dierkers?

A. Yes, sir, I will.

After that exchange defendant testified to other expenses and damages as a result of plaintiffs' failure to purchase the clinic. In closing argument defendant's attorney asked the jury to award the balance of the purchase price, $145,020, plus interest for the breach of contract. He also asked the jury to award additional damages for fraudulent misrepresentation.

The jury in fact awarded $145,020, the balance due on the purchase price, on the breach of contract claim. The jury did not award any future damages on the breach of contract claim. Even if there was insufficient evidence to support future damages, plaintiffs were not prejudiced by the inclusion of future damages in Instruction 15 because the jury failed to award future damages. *Crank v. Firestone Tire & Rubber Co.*, 692 S.W.2d 397, 401 (Mo.App. 1985).

## D. STATUTORY PREJUDGMENT INTEREST

Plaintiffs contend that the trial court erroneously awarded defendant $86,286.90 in statutory prejudgment interest on his breach of contract claim. Plaintiffs assert that the pleadings did not allege that defendant made a demand for payment of interest or request any amount of prejudgment interest. They further assert that

the amount of interest was not easily ascertainable and contend that defendant waived any claim to interest because, during closing argument, he asked the jury to award interest, and thus the jury's award would presumably include interest. The trial court did not err in awarding prejudgment interest.

In his amended counterclaim defendant asked for "a sum that will fairly and justly compensate Defendant for his actual damages" on his breach of contract claim. The jury did not award interest as part of the damage award on the contract claim. Following receipt of the verdicts and entry of the judgment, defendant filed a motion with supporting suggestions requesting that the court amend the judgment to include prejudgment interest pursuant to § 408.020 RSMo 1986. The trial court sustained the motion and awarded defendant $86,286.90 as prejudgment interest.

■■■ Section 408.020 RSMo 1986 provides in pertinent part:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, ... on written contracts....

This statute requires prejudgment interest to be awarded whenever the amount due is liquidated or, if not strictly liquidated, readily ascertainable by reference to recognized standards. *Denton Constr. Co. v. Missouri State Highway Comm'n*, 454 S.W.2d 44, 59–60 (Mo.1970). When the amount due is liquidated or readily ascertainable and the prejudgment interest depends merely upon mathematical computation pursuant to § 408.020, it is permissible under Missouri law for the trial court, rather than the jury, to perform the mathematical process of computing the interest. *California & Hawaiian Sugar Co. v. Kansas City Terminal Warehouse Co.*, 788 F.2d 1331, 1335 (8th Cir.1986); *Addison v. Jester*, 758 S.W.2d 454, 460 (Mo.App.1988). In this case the amount due was readily ascertainable by reference to the August 4 written agreement, the documents indicating agreement on a total price, and the documents evidencing payment.

■■■ Moreover, an express allegation seeking prejudgment interest is not a prerequisite to an award of such interest. *Addison*, 758 S.W.2d at 460. A petition which prays that the court grant "such other relief as may be proper" is sufficient. *Id.* Defendant's amended counterclaim satisfies this requirement. The trial court's award of prejudgment interest was not erroneous.

## II. POINTS OF ERROR RELATING TO FRAUDULENT MISREPRESENTATION CLAIM

Plaintiffs raise six points of error relating to defendant's fraudulent misrepresentation claim. We address them by subject matter.

### A. SUBMISSIBILITY

Plaintiffs assert that the trial court erred in overruling their motion for directed verdict at the close of the evidence and their motion for judgment NOV because defendant neither pleaded nor proved the elements of fraud or misrepresentation on his fraudulent misrepresentation claim. We review this issue for plain error because, as we have previously explained, plaintiffs failed to give specific reasons or grounds for their motion for directed verdict.

In reviewing the denial of a motion for judgment NOV, we view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party and disregard all evidence and inferences to the contrary to determine whether a submissible case was made. *Marti*, 761 S.W.2d at 255–56.

■■■ The elements of a claim of fraudulent misrepresentation are:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated;

(4) the hearer's ignorance of the falsity of the representation;

(5) the hearer's reliance on its truth;

(6) the hearer's right to rely thereon; and

(7) the hearer's consequent and proximately caused injury.

*Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988).

 Plaintiffs assert that the evidence demonstrated that neither plaintiff knowingly made any false representations to defendant and that defendant did not rely on any representations made by either plaintiff. Plaintiffs argue that they believed they would get financing. Plaintiffs also argue that the fact that defendant was already committed to move to Louisiana before negotiations for the clinic began and the fact that the agreement was contingent on financing establishes defendant's lack of reliance on any representation made by plaintiffs.

Plaintiffs' assertions fail because defendant's case did not turn on representations about or reliance on bank financing. As expressed in the verdict director, the representation was that plaintiffs "intended to fulfill the conditions of the Agreement" and to "deliver the funds necessary to do so...."

There was substantial evidence from which it reasonably could be inferred that plaintiffs knew their representations were false. Carol Dierker acknowledged that on August 4, 1985 plaintiffs had the money to complete the purchase. Plaintiffs' pattern of conduct in repeatedly offering excuses for not paying the balance due and delaying payment when the money was available is substantial circumstantial evidence from which the jury could infer that plaintiffs knew that they were not going to fulfill the conditions of the agreement and were not going to pay the balance of the purchase price.

There was also substantial evidence that defendant relied on the representations. He not only proceeded with his plans to move to Louisiana, but he also turned over his business, clients, equipment and premises to the plaintiffs.

Plaintiffs further argue that no submissible case was made because defendant did not offer sufficient evidence to support an allegation in the counterclaim that plaintiffs took the action they did to destroy the Gillis Clinic to eliminate competition to the clinic they eventually bought. However, we need not address this issue because, even if there was insufficient evidence to support this factual allegation, defendant offered sufficient evidence to make a submissible case on his fraudulent misrepresentation claim. The trial court did not err in overruling plaintiffs' motion for judgment NOV on the fraudulent misrepresentation claim.

### B. VERDICT DIRECTOR

Plaintiffs contend that the trial court prejudicially erred in giving Instruction 17, the verdict director on the fraudulent misrepresentation claim, because it presumed the existence of an agreement between the parties, used the term "negligent representation" rather than "fraudulent misrepresentation", failed to define "negligent", and did not follow MAI 23.05 in other respects.

Instruction 17, based on MAI 23.05 [1981 Revision], read as follows:

Your verdict must be for Defendant Jay D. Gillis and against Plaintiffs Carol A. Dierker and Bernard F. Dierker on his claim for negligent misrepresentation if you believe:

First, Plaintiffs Carol A. Dierker and Bernard F. Dierker represented to Defendant Jay D. Gillis that they intended to fulfill the conditions of the Agreement concerning the Gillis Back Pain Clinic and deliver the funds necessary to do so and close on the transaction, intending that Defendant Jay D. Gillis rely upon such representation in making future business plans, and

Second, said representation was false, and

Third, Plaintiffs, Carl [sic] A. Dierker and Bernard F. Dierker knew that they were false, and

Fourth, the representations were material to Defendant's future business plans, and

Fifth, Defendant Jay D. Gillis relied on the representation in making future business plans, and

Sixth, Defendant had a right to rely on said representations, and

Seventh, as a direct result of such representations the Defendant Jay D. Gillis was damaged.

■ Plaintiffs first contend that this instruction erroneously assumed the existence of an agreement, which was a disputed issue in the case. Plaintiffs specifically objected on this ground at trial.

Even if we assume that this instruction, standing alone, does assume a disputed ultimate issue, we must consider it together with any affirmative converse instruction given on the fraudulent misrepresentation claim. *Miller*, 407 S.W.2d at 53–54; *J.A. Tobin Const.*, 680 S.W.2d at 192. In this case the trial court gave Instruction 18, an affirmative converse instruction which required the jury to return a verdict for plaintiffs if it believed that the parties did not make an agreement. The jury could not have returned a verdict on defendant's fraudulent misrepresentation claim without first determining the disputed issue of the existence of an agreement. Accordingly we find no prejudicial error.

■ Plaintiffs next contend that the language used in Instruction 17 was prejudicially erroneous in various respects. Plaintiffs did not object on these grounds at trial, but preserved these issues for review by making specific objections in their motion for new trial. Rule 73.03.

We will not reverse for instructional error unless prejudice is shown. *Frederick*, 736 S.W.2d at 521. Failure to object at trial may be considered in assessing prejudicial effect. *Id.; Benson Optical*, 810 S.W.2d at 535. A jury is not likely to be misled by an alleged defect in an instruction when the defect was not readily apparent to trial counsel. *Midwest Materials*, 806 S.W.2d at 494.

Plaintiffs assert that the word "negligent" was mistakenly used instead of "fraudulent" in the instruction's opening paragraph describing the claim. This mistake was not prejudicial. In the body of the instruction, the jury was required to find the elements of fraudulent misrepresentation. Further, plaintiffs also described the claim as "negligent misrepresentation" in proposed Instruction A, their proposed verdict director on defendant's fraudulent misrepresentation claim. We believe a jury would not be misled or confused when the alleged defect was not readily apparent to an alert counsel, who made the same mistake in her own proposed instruction. *Hudson v. Carr*, 668 S.W.2d 68, 72 (Mo. banc 1984).

■ Plaintiffs next assert that "negligent" should have been defined. This argument is specious. Plaintiffs rely on the rule that "negligent" is a legal term which must be defined when used in a verdict director in order to avoid giving the jury a roving commission. *Meier v. Geile*, 479 S.W.2d 214, 216 (Mo.App.1972); MAI 11.02 [1978 Revision], Notes on Use. However, this rule only applies when it is necessary for the jury to decide whether a party is negligent. In this instruction the word negligent was inadvertently used to describe the type of claim. Accordingly, a definition was wholly unwarranted.

■ Plaintiffs next contend that the case involves misrepresentation as to a future event and therefore, pursuant to MAI 23.05, Notes on Use 1, the third paragraph of the instruction should have contained the alternate language that "[plaintiffs] knew that it was false at the time the representation was made." Defendant proceeded under the theory that plaintiffs made a "present representation" of the availability of their money and of their intent to fulfill the conditions of the August 4 agreement. However, even if the representation was with respect to a future event, there was no error because plaintiffs submitted, and the trial court gave, an affirmative converse instruction which provided that the verdict must be for plaintiffs if the jury believed the representation was not false at the time it was made. *Miller*, 407 S.W.2d at 53–54; *J.A. Tobin Const.*, 680 S.W.2d at 192.

Plaintiffs further contend that the fifth paragraph of the instruction failed to include the language from MAI 23.05 that "in so relying [defendant] was using ordinary care. . . ." This language should only be omitted "when the right to rely is not in issue." MAI 23.05, Notes on Use 3. Plaintiffs argue that the "right to rely" was at issue in this case and the omission of the phrase constituted prejudicial error. We do not believe this omission, if error, was prejudicial. Not only did plaintiffs not object that this instruction omitted this language, but Instruction A, tendered by plaintiffs and marked "Refused" by the court, also omitted this language. The defect was thus not readily apparent to trial counsel and therefore not likely to mislead the jury. *Midwest Materials*, 806 S.W.2d at 494. Further, the trial court did instruct the jury in the next paragraph that it must find that defendant had a "right to rely" on the representations. Although the element of "right to rely" should have been submitted to the jury in the MAI language, we find no prejudice under these circumstances. *Wiedower v. ACF Indus.*, 715 S.W.2d 303, 305 (Mo.App.1986).

Plaintiffs next assert that the trial court prejudicially erred in modifying Instruction 17. On its own motion the trial court inserted language which required the jury to find that "defendant had a right to rely on said representations." Although this element should have been submitted in the "ordinary care" language of MAI 23.05, we find no prejudice for the reasons stated above. *Id.*

### C. DAMAGE INSTRUCTIONS

Plaintiffs contend that the trial court erred in not giving a separate actual damage instruction on defendant's claim for fraudulent misrepresentation. The trial court submitted four separate claims to the jury: plaintiffs' two claims and defendant's two claims. Pursuant to MAI 2.00 [1981 Revision] the trial court submitted each claim in a separate package. The package

for defendant's fraudulent misrepresentation claim consisted of Instructions 17 through 20 and General Instructions 1 through 5. Instruction 17 was the verdict director, Instruction 18 was the converse of Instruction 17, Instruction 19 was a punitive damage instruction, and Instruction 20 was the converse of Instruction 19. Instruction 19 contained a reference to Instruction 17 at a point where a reference to the actual damages instruction should have been made. No instruction on actual damages was included in the package.

At the jury instruction conference plaintiff did not object to the trial court's failure to submit an actual damage instruction on this claim. However, plaintiffs raised this objection in their motion for new trial. Rule 70.03.

We agree with plaintiffs that the trial court erred by failing to submit an actual damage instruction in the fraudulent misrepresentation package. When packaging is appropriate MAI 2.00 requires the instruction package on each claim to begin with MAI 2.05, which identifies the specific instructions applicable to that claim. MAI 2.05 is to be followed by the specific instructions applicable to that claim, including verdict directors, converse instructions, affirmative defense instructions, damage instructions and any applicable definitions. MAI 2.00 [1981 Revision]. The trial court correctly used this format, but omitted an actual damage instruction from the fraudulent misrepresentation package. This omission was error. A damage instruction is mandatory in a damage suit unless the amount of damage is not in dispute. *Missouri Approved Jury Instructions*, "Why and How to Instruct a Jury," at LXXXIII (4th ed. 1991). The fact that there was an actual damage instruction contained in the breach of contract package does not cure the error, even if it was, as defendants argue, the same damage instruction that should have been included in the fraudulent misrepresentation package.[1] The jury was instructed that that damage instruction applied only to the breach of contract claim.

---

1. The issue of what damage instruction should have been given is not before us and we express no opinion thereon.

Further, the rule that a party cannot complain or predicate error on the failure to give an instruction where such party failed to timely tender and request, during the instruction conference, a proposed instruction on the matter, as expressed in *Dudeck v. Ellis,* 399 S.W.2d 80, 98 (Mo. 1966) and *Verdin v. Agnew,* 715 S.W.2d 544, 546 (Mo.App.1986), and argued by defendant, does not apply under these circumstances. These cases deal with a defending party's failure to submit converse or affirmative defense instructions, and not with defending party's failure to submit damage instructions.

Defendant argues that this omission does not constitute reversible error because plaintiffs suffered no resultant prejudice. He asserts that the proper actual damages were requested in closing argument and the jury awarded actual damages consistent with those requested.

■ Although we would look to closing argument to determine prejudice in the case of a deviation from MAI, *Frederick,* 736 S.W.2d at 521, the failure to give a mandatory damage instruction is error of a much higher magnitude. That error and resultant prejudice cannot be overcome by a proper argument or by a proper award of damages. *See Ross v. Holton,* 640 S.W.2d 166, 172–73 (Mo.App.1982). The failure to include an actual damage instruction in the fraudulent misrepresentation package requires us to set aside the damage award and order a new trial on the issue of actual damages on defendant's fraudulent misrepresentation claim.

■ Plaintiffs also allege various errors with respect to the punitive damage instruction on defendant's fraudulent misrepresentation claim. Because we must set aside the actual damage award, the award for punitive damages must also be set aside. *Maples v. Charles Burt Realtor,* 690 S.W.2d 202, 214 (Mo.App.1985). On retrial the problems raised with respect to the punitive damage instruction given in the first trial can be corrected. The instruction should refer to the actual damage instruction where appropriate. Because punitive damages are sought against two

parties, MAI 10.03 [1983 Revision] should be used.

■ Likewise, plaintiffs' contention that the two actual damage awards constituted a double recovery, which contention was not raised in any fashion in the trial court, is now moot. On retrial the parties can properly raise the issue with the trial court to avoid awarding duplicative damages where the actual damages on the tort claim are coextensive with the actual damages on the contract claim. Defendant may recover any damages proved on the fraudulent misrepresentation claim which are not coextensive with the actual damages awarded on the breach of contract claim. *Kincaid Enters.,* 812 S.W.2d at 900–01; *Ross,* 640 S.W.2d at 173; *Clayton Brokerage Co. v. Pilla,* 632 S.W.2d 300, 306 (Mo.App.1982).

## CONCLUSION

■ The trial court's error in failing to include an actual damage instruction in defendant's fraudulent misrepresentation package does not affect the jury's finding of liability on his fraudulent misrepresentation claim. If the liability issue was fairly tried and there is error on the issue of damages, we must sustain the finding of liability and remand the case for retrial on the issue of damages only. *Dickerson v. St. Louis Southwestern Ry. Co.,* 697 S.W.2d 210, 212 (Mo.App.1985); *Crank,* 692 S.W.2d at 403; *Berry v. Federal Kemper Ins. Co.,* 621 S.W.2d 948, 954 (Mo.App. 1981).

The judgment of the trial court on Count I of the Amended Counterclaim in the amount of $145,020 and the award of statutory prejudgment interest in the amount of $86,286.90 is affirmed. The finding of liability on Count II of the Amended Counterclaim is affirmed. The award of damages on Count II is set aside and the issue of damages is remanded for a new trial.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.