**Lilly BEERS, Administratrix of the Estate of Lester Wayne Beers, Deceased, Plaintiff-Appellant,**

v.

**WESTERN AUTO SUPPLY COMPANY, and Universal Tool & Stamping Company, Inc., Defendants-Respondents.**

**No. WD 32877.**

Missouri Court of Appeals, Western District.

Dec. 7, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 1, 1983.

Application to Transfer Denied March 29, 1983.

Timothy H. Bosler, Liberty, John H. Norton, Norton, Pollard & Norton, Inc., North Kansas City, for plaintiff-appellant.

James H. Horn, Kansas City, and James Bandy, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for defendants-respondents.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Lilly Beers, the administratrix of the estate of her husband Lester Wayne Beers, brought suit for her husband's wrongful death. The petition pleaded both negligence and strict liability theories of defective design and insufficient warning relating to a certain bumper jack, which was manufactured by Universal Tool & Stamping Company and sold by Western Auto Supply Company. The jury returned a verdict in favor of Western Auto and Universal. In her appeal, Mrs. Beers contends that the court erred in giving multiple contributory fault instructions and in excluding a film offered in connection with the testimony of her expert witness. Reversed and remanded.

While there were no witnesses to the accident leading to Mr. Beers' death, he had apparently been using a chain link bumper jack manufactured by Universal and sold by Western Auto to raise the rear of his 1968 Rambler. He was in the process of removing the drive shaft, when the car rolled off the jack. As a result, Mr. Beers was pinned underneath the car, and he died from suffocation.

The evidence revealed that Mr. Beers had purchased the jack from Western Auto and modified its lip, which is the piece that fits under the car bumper. In the jack as it was originally manufactured, the lip extended in a "V" shape, with the end curved back toward the shaft. In the jack as it was modified by Mr. Beers, the lip resembled an "L" shape, with the lip extending at a slight upward angle and then straightening at the end.

Mrs. Beers' expert witness at trial was John Sevart, a professor of mechanical engineering at Wichita State University. Mr. Sevart testified regarding certain design defects in the jack and a deficiency in the warnings as to the use of the jack. In anticipation that a defense would be that the accident was caused by Mr. Beers' modification of the bumper jack's lip, Mr. Sevart

performed and filmed tests which involved raising a car using a jack like the one involved in this case as the jack was originally manufactured, and then performing the same tests using the jack as modified by Mr. Beers.

The object of these tests was to demonstrate that a car would not roll off the modified jack any easier than it would roll off the original model. This was demonstrated by Mr. Sevart's pushing the car while it was raised on each jack, and then by using a device which would measure the amount of force necessary to cause the car to roll off of each jack. Western Auto and Universal, who were represented at the trial by the same counsel, filed a motion in limine to exclude the film from evidence. The court sustained this motion, and although Sevart testified regarding the tests he had performed, he was prevented from referring to the film during the trial and showing the film to the jury.

The case was submitted to the jury under four separate verdict directing instructions. Two of the instructions, one for each defendant, were based on MAI 25.04, which sets forth a theory of strict liability for design defect. The other two instructions, again one for each defendant, were based on MAI 25.05, which sets forth a theory of strict liability for failure to warn. The court submitted two converse instructions, one relating to each verdict directing instruction against each defendant. The court also gave four instructions submitting the affirmative defense of contributory fault as set forth in MAI 32.23, one on behalf of each defendant based on design defect, and one on behalf of each defendant based on the failure to warn. These were the last four instructions read to the jury.

Mrs. Beers contends that the giving of the four contributory fault instructions violated the Notes on Use under MAI 32.23. These Notes on Use state that if the plaintiff submitted under both MAI 25.04, the verdict director on strict liability for product defect, and MAI 25.05, the verdict director on strict liability for failure to warn, then a bracketed portion of MAI 32.23 is to be inserted, so that a single instruction shall refer to both verdict directors. The Notes conclude that "the defense submitted under this instruction is a defense to both theories of recovery."

■ It is well settled that the Notes on Use to MAI must be followed. *Vest v. City National Bank and Trust Company,* 470 S.W.2d 518, 520[1] (Mo.1971). Furthermore, a failure to follow the Notes on Use "may be (and almost invariably is) reversible error." *Riley v. Bi-State Transit System,* 459 S.W.2d 753, 757[4] (Mo.App.1970).

■ In *Nugent v. Hamilton & Son, Inc.,* 417 S.W.2d 939, 941–42[4] (Mo.1967), the court addressed the problem of repetitive instructions in view of the changes brought about by the adoption of the MAI pattern instructions. The court noted that one of the main objectives of MAI was to "avoid the 'sheer volume of words' which it was recognized might in itself be confusing to a juror, by cutting the instructions to the bare essentials."

In the *Nugent* case, three converse instructions were given in violation of the mandate of the MAI, which allowed for only one such converse instruction. The court concluded that these instructions had not been given to assist the jury, but rather to forcefully hammer home the defense in the minds of the jurors in order to gain an advantage for the defendants. The *Nugent* court held this to be prejudicial error, and stated that to rule otherwise would emasculate the applicable MAI and a portion of its Notes on Use. The court concluded by stating that after the adoption of MAI, the former rules relating to repetition in instructions must be read in light of the reformation brought about by MAI.

The language in *Nugent* is directly applicable to the case at bar. In this case, the two defendants gave two instructions on contributory fault in direct violation of the Notes on Use to MAI 32.23. The defendant's purpose in submitting these four contributory fault instructions was undoubtedly to hammer home the instruction to the jury. To condone the giving of these multi-

ple instructions would be to nullify the Notes on Use, which clearly require that a single instruction based on MAI 32.23 cover both the theory of design defect and failure to warn.

The wisdom of the provision that an instruction based on MAI 32.23 should refer to both of these theories of liability may be demonstrated by hypothesizing that there were four defendants in this case instead of two. If the manner of instructions which the trial court allowed in this case was allowed in that hypothetical case, this would mean that the last eight instructions read to the jury would be contributory fault instructions which had identical language, with the exception of the instruction number referring to the verdict director.

Western Auto and Universal seek to avoid the consequences of being held to be in violation of the Notes on Use by pointing out that the instructions conform to MAI 32.23 itself. The court in *Nugent* faced a similar situation, and held that while the instructions involved there were each correct, the fact that three instructions were given instead of one constituted error. The giving of multiple instructions in violation of express MAI provisions constitutes error. In this case, submission of an excessive number of contributory fault instructions constitutes a plain violation of MAI. This violation of MAI is presumed to be prejudicially erroneous "unless it is made perfectly clear that no prejudice has resulted." *Murphy v. Land,* 420 S.W.2d 505, 507[4] (Mo. 1967). This court finds that there was prejudicial error against Mrs. Beers, because the repetitive instructions unduly emphasized the contributory fault defense.

In light of the fact that this case must be reversed due to the instructional error discussed above, it is necessary for this court to address one other issue which will undoubtly arise on the retrial of this case. Mrs. Beers contends that the court erred in excluding the film showing her expert Mr. Sevart conducting tests on the two jacks. Western Auto and Universal objected to a showing of this film at trial on the grounds that the film did not accurately duplicate the conditions existent at the time of the accident. Mrs. Beers freely admits that the film does not duplicate the accident conditions, but contends that no effort was ever made to do so. She claims that the film was admissible for the limited purpose of serving as a visual aid to Mr. Sevart's testimony that it did not require less force to cause a car to roll off the modified jack than it did for a car to roll off a jack in the original condition.

■ The admissibility of films into evidence is a matter within the discretion of the trial court. *Cryts v. Ford Motor Company,* 571 S.W.2d 683, 691[17–20] (Mo.App. 1978). In cases where the film in question is being introduced into evidence for the purpose of re-creating the accident or incident at issue, the similarity of the film to the incident is obviously crucial. This is, however, a totally different situation from one in which a film is offered for a purpose other than re-creating the incident, and this difference is recognized in the case law.

■ While the latter factual situation has not yet occurred in Missouri's case law, there is a line of recent out-of-state cases dealing with the question of the admissibility of films into evidence for other purposes. The most recent of these cases is *Green v. General Motors Corporation,* 304 N.W.2d 600 (Mich.App.1981). In this case, the trial court's admission of a film into evidence was affirmed. In support of its decision, the appeals court stated that the film in question was intended to serve as a visual aid in illustrating an expert's testimony regarding the forces which transmit frontal impact to the rear axle assembly of a typical automobile. The court added that it was confident that since the film did not create the impression of reenacting the accident, there was little potential for jury confusion regarding the purpose of the film.

A similar issue was addressed in *Young v. Illinois Central Gulf Railroad Company,* 618 F.2d 332 (5th Cir.1980). In *Young,* the court held that the trial court had erred in excluding from evidence a filmed experiment showing that it was possible for a car to have been diverted onto a railroad track

because of the design of a crossing. Again, the court placed much importance on the fact that the film was not offered to reenact the accident, but rather to supplement the testimony of an expert witness. In addition, the court felt that the average layperson would have difficulty understanding the physical factors involved in *evaluating the design of a railroad crossing* without a visual aid of this sort.

A third case in this category is *Lahocki v. Contee Sand & Gravel*, 41 Md.App. 579, 398 A.2d 490 (1979), *rev'd on other grounds, General Motors Corporation v. Lahocki*, 286 Md. 714, 410 A.2d 1039 (1980), where the court held that certain films had been properly admitted into evidence. These films showed test automobile crashes involving the upper torso of an anthropomorphic dummy. The *Lahocki* court was persuaded by the fact that the only purpose of the films was to demonstrate the foundation for the expert's opinion. The court also noted that the defendant could certainly attack that foundation by pointing out to the jury dissimilarities between the tests conducted and the actual circumstances of the accident at issue.

This court has viewed the film in question, and is satisfied that this case falls squarely within the doctrine of *Green, Young,* and *Lahocki.* The only purpose of the film was to demonstrate the foundation for Mr. Sevart's opinion that it required no *greater force for a car to roll off a modified* jack than it did to roll off a jack in its original condition. The film shows Sevart jacking up the rear end of a car while using the jack in its original condition and again while using the jack modified by Mr. Beers. The film shows only Mr. Sevart and the rear portion of the car, and there is no sound accompanying the film. The jury would obviously have recognized Mr. Sevart in the film as the witness who was testifying before them, and thus would not think that he was an actor intended to represent Mr. Beers.

It was made clear by both counsel and by Mr. Sevart when the question of admitting the film was raised before the trial court that the conditions of the test not only failed to duplicate the conditions of Mr. Beers' accident, but that it deliberately differed in many respects, because its sole purpose was to depict certain tests that Mr. Sevart has performed. Thus, the film was unlikely to confuse the jury, and the respondents were free to point out to the jury dissimilarities between the tests and the actual circumstances of the accident. In addition, the average layperson would have some difficulty understanding the physical properties of bumper jacks without a visual aid of this type.

This court concludes that the trial court abused its discretion in refusing to admit the film in question into evidence. The only basis for the court's exclusion was its fear that the jury would consider the film to be a simulation of the accident. This court finds this rationale to be unacceptable, on the basis of both the content of the film itself, and in light of the fact that the parties would have been free to call the dissimilarities between the tests and the accident to the jury's attention. These factors together would have eliminated any potential jury confusion. This is not to say that every such film should be admitted. The question is first addressed to the discretion of the trial court. Here this court finds that the trial court abused its discretion in excluding the films. Obviously each case will rest on its own facts.

The other matters which Mrs. Beers raises in her appeal need not recur. In addition, each of these matters involve discretionary rulings on the part of the trial court. This court finds that there was no abuse of discretion in these other rulings. Thus, in light of the respondent's failure to follow the Notes on Use to MAI 32.23 which resulted in the giving of multiple contributory fault instructions, the judgment is reversed and this cause is remanded for a new trial.

All concur.