Carol L. KING, Respondent,

v.

COPP TRUCKING, INC., Defendant,

and

Anheuser–Busch, Inc., Appellant.

No. WD 45914.

Missouri Court of Appeals, Western District.

April 6, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Joseph C. Smith, Shughart, Thomson & Kilroy, P.C., Kansas City, for appellant.

Max Von Erdmannsdorff, Von Erdmannsdorff & Mowry, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and KENNEDY, JJ.

BRECKENRIDGE, Presiding Judge.

Anheuser–Busch, Inc. appeals from the $164,500 judgment entered against it upon a jury verdict in favor of Carol L. King (King) and against Anheuser–Busch and Copp Trucking, Inc. The jury assessed King's damages to be $658,000 and apportioned 75% of the fault to Copp Trucking and 25% to Anheuser–Busch. Anheuser–Busch claims that the trial court erred in: 1) overruling Anheuser–Busch's objections to the admission of new expert opinions; 2) precluding the introduction into evidence of a video tape of tests performed by Anheuser–Busch's expert; and 3) allowing counsel to use leading questions in examination of an expert.

The judgment is affirmed.

On February 3, 1989, King filed suit against Anheuser–Busch and Copp Trucking for injuries she sustained in an accident involving the rollover of a tractor trailer owned by Copp Trucking. King was a passenger in the truck, which was being driven by her husband, Kevin King. The accident occurred as the truck was proceeding through a construction detour. The truck was transporting kegs of beer manufactured by Anheuser–Busch which had been loaded by Anheuser–Busch employees at its St. Louis facility. King's allegations against Copp Trucking involved the negligent driving of her husband and the negligent provision of a truck with defective equipment. Her allegation against Anheuser–Busch was that the kegs were negligently loaded which made the trailer unstable and caused or contributed to the rollover of the truck.

■ Prior to trial, King entered into a Mary Carter Agreement with Copp Trucking.[1] At trial, John M. Bentley was called as an expert witness by King. Bentley was retained in this case by Copp Trucking to offer testimony regarding his reconstruction of the accident. Bentley's deposition was taken prior to trial. At the deposition, Bentley presented a document setting forth four opinions and indicated that, although this document contained all of his final opinions, he had formulated sub-opinions in support of these final opinions. Bentley's document set forth the following four opinions: 1) Slide to stop speed is consistent with T/T (tractor trailer) following flow of traffic; 2) Under a stable load the T/T should not have experienced rollover; 3) The rollover was a result of lateral load shift; and 4) Had the cargo been restrained laterally, the accident could have been avoided.

At trial, Anheuser–Busch objected to Bentley's trial testimony on the basis that it contained "new" opinions based on facts not previously disclosed. The court overruled the objection stating that these opinions were not new, but were interpretations of the opinions Bentley gave in his deposition.

After direct examination of Bentley by King's counsel, Bentley was cross-examined by counsel for Copp Trucking. An-

---

1. The term "Mary Carter Agreement" arises out of the case of *Booth v. Mary Carter Paint Company*, 202 So.2d 8 (Fla.App.1967) *overruled on other grounds by Ward v. Ochoa*, 284 So.2d 385 (Fla.1973). A Mary Carter Agreement limits an agreeing defendant's liability to a certain amount and guarantees that the plaintiff will receive at least that amount. *Hackman v. Dandamudi*, 733 S.W.2d 452, 455 (Mo.App.1986). In the case at bar, King agreed to "diligently proceed to judgment against Anheuser–Busch in order to fully recover the damages which she sustained as a result of the negligence of Anheu-

ser–Busch." In exchange, Copp Trucking guaranteed King that she would receive a minimum of $210,000 in accordance with the following guidelines:

1) If King recovered nothing from Anheuser–Busch, Copp Trucking would pay her $210,000; 2) If King recovered less than $420,000 from Anheuser–Busch, Copp Trucking would pay her half the difference between the amount recovered and $420,000; and 3) If King recovered $420,000 or more from Anheuser–Busch, Copp Trucking would pay her nothing.

heuser–Busch objected to Copp Trucking's use of leading questions when questioning its own expert witness. The court overruled the objection.

Anheuser–Busch sought to introduce into evidence a video tape of tests conducted by their expert witness, H. Boulter Kelsey. King and Copp Trucking objected on the grounds that the video tape would mislead the jury because it did not depict experiments similar enough to the accident to be probative. Although the court sustained the objection and excluded the video tape, the court allowed Kelsey to testify about the tests he had conducted and their results.

The jury found in favor of King and against both Anheuser–Busch and Copp Trucking in the amount of $658,000. The jury assessed Copp Trucking with 75% of the fault and Anheuser–Busch with 25% of the fault. The trial court entered judgment in favor of King and against Copp Trucking in the amount of $493,500 and against Anheuser–Busch in the amount of $164,500. Anheuser–Busch appeals from such judgment.

Anheuser–Busch raises three points on appeal claiming that the trial court erred in: 1) overruling Anheuser–Busch's objections to the admission of Bentley's new expert opinions because the new opinions were not revealed in Bentley's deposition or provided thereafter; 2) precluding Anheuser–Busch from introducing into evidence the video tape depicting tests performed by its expert, Kelsey, because the tape would have aided the jury in understanding Kelsey's opinions; and 3) allowing counsel for Copp Trucking to use leading questions during its examination of expert witness Bentley because Bentley was retained by Copp Trucking.

In Point I, Anheuser–Busch argues that the trial court erred in overruling its objections to the admission of expert opinions given by Bentley which it claims were new. Anheuser–Busch claims that, because the new opinions were not revealed at Bentley's deposition or any other time before trial, they were not admissible at trial.

The decision of the trial court as to the admissibility of evidence is accorded substantial deference on appeal and will not be disturbed unless the trial court has abused its discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). In *State ex rel. Webster v. Lehndorff Geneva*, 744 S.W.2d 801, 804 (Mo. banc 1988), the Supreme Court of Missouri described the standard for determining whether a trial court has abused its discretion as follows:

> Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. (citation omitted).

A ruling within the trial court's discretion is presumed correct and the appellant bears the burden of showing that the trial court abused its discretion. *Id.* In addition to showing that the trial court abused its discretion, Anheuser–Busch must also prove that it has been prejudiced by the abuse because an error in the exclusion of evidence is harmless if the same facts have been shown by other evidence and exhibits. *Around the World Importing v. Mercantile*, 795 S.W.2d 85, 89 (Mo.App.1990).

Anheuser–Busch argues that it is entitled to a new trial free from the prejudice that resulted from Bentley's new opinions. Anheuser–Busch claims that, according to this court's opinion in *Gassen v. Woy*, 785 S.W.2d 601, 604 (Mo.App.1990), King was obligated to disclose those new opinions to Anheuser–Busch prior to trial. Rule 56.01(e)(2) requires a party to supplement written interrogatory responses when a response changes or becomes untrue. In *Gassen*, this court held that the rules and the case law establish a similar principle in regard to deposition answers. *Id.* When an expert witness has been deposed and after the deposition, but before trial, either changes his opinion or bases an opinion upon new or different facts from those which were disclosed in the deposition, the

party intending to use the expert witness must disclose the new information to the adverse party. *Id.*

Anheuser–Busch bears the burden of proving that Bentley's opinions were new and different from those which he gave in his deposition. The opinions which Anheuser–Busch alleges were offered for the first time at trial are:

1. Taking into account the weight of this load and the trailer involved, the trailer compartment would be tilted on the order of 6 to 8 degrees as it proceeded around this curve prior to rollover.

2. The G-force required to cause a rollover of the tractor trailer involved in this case was below .3 to .35.

3. The pallets should have been loaded differently, stacking them in a different configuration than that utilized by Anheuser–Busch for this load.

■ An examination of the transcripts from Bentley's deposition and the trial reveals that the trial court did not abuse its discretion in permitting Bentley to testify to these opinions. Bentley's opinion that the trailer was tilted on the order of six to eight degrees while proceeding around the curve was not objected to at trial. Anheuser–Busch's failure to object does not preserve any error for review on appeal. *Health Related Services v. Golden Plains*, 806 S.W.2d 102, 110 (Mo.App.1991). At trial Anheuser–Busch did object that Bentley's opinion that the G-force required to cause a rollover of the Copp Trucking tractor trailer was below .3 to .35 was a new opinion. Although Bentley stated in his deposition that he did not apply the computation of G-force to this case, he expressed the opinion that .3 to .35 was the range of G-force required to cause the rollover of a stable, loaded tractor trailer. A reasonable extension of such opinion is that it would take a lower G-force to cause a rollover of an unstable tractor trailer. The trial court's ruling permitting Bentley to testify to this opinion is not so arbitrary and unreasonable as to shock this court's sense of justice.

■ The third opinion which Anheuser–Busch claims was erroneously permitted at trial was that the pallets should have been loaded differently, in a different configuration. This is not a sufficiently new opinion to require its exclusion. It is merely a restatement of Bentley's opinion that the manner in which the kegs were loaded was unstable and caused or contributed to causing the accident.

Anheuser–Busch has failed to prove that Bentley's two opinions, which were objected to at trial, were anything other than interpretations or supporting analysis of the four final opinions listed in the document he submitted during the deposition. Anheuser–Busch failed to prove an abuse of discretion by the trial court. Point I is denied.

■ Anheuser–Busch claims in Point II that the trial court erred in precluding it from introducing into evidence a video tape of the tests performed by its expert, H. Boulter Kelsey. Anheuser–Busch asserts that the video tape was not represented as a reenactment of the accident, but was instead offered to explain the tests Kelsey performed and to aid the jury in understanding Kelsey's opinions.

The trial court is vested with discretion to decide whether a film should be admitted into evidence. *Beers v. Western Auto Supply Co.*, 646 S.W.2d 812, 815 (Mo.App. 1982). The issue in deciding whether to admit or reject a video tape is whether the film is "practical, instructive and calculated to assist the jury and the court in understanding the case." *Roque v. Kaw Transport Co.*, 697 S.W.2d 254, 256 (Mo.App. 1985). The trial court's ruling is accorded great deference on appeal and will not be disturbed unless an abuse of discretion is shown. *Id.* In addition, trial error will not require reversal on appeal unless the error materially affected the merits of the action. *Id.*

In the instant case, Kelsey testified that he was "not attempting to duplicate the conditions at the accident." Anheuser–Busch sought to introduce the film to assist the jury in understanding the tests Kelsey performed. Prior to viewing the video tape, the trial court refused to allow it to

be admitted into evidence on the basis that it would confuse and mislead the jury. The trial court was concerned that because several important pieces of information regarding the accident were unascertainable and could not be proved by either of the parties, the jury might adopt the circumstances of the video tape to fill in those unascertainable facts. These missing facts included the precise position and arrangement in which the beer kegs were loaded onto the trailer, the manner in which the pallets were stacked on the trailer, the arrangement of the pallets on the floor of the trailer and facts regarding the condition of the trailer's floor. The trial court stated the following after viewing the film:

> After viewing the tape, I am more convinced than ever that it should not be shown to the jury. We have a stationary truck sitting on a flat surface in the middle of a parking lot with a stack of beer barrels that are not centered in the center of the truck in what appears to the Court to be a rather staged condition which is not consistent at all with the accident and what I've heard.... I believe the tape itself is staged in such a way that it could mislead the jury.

Anheuser–Busch argues that the facts of the instant case are analogous to the facts of *Beers*. In *Beers*, 646 S.W.2d at 814, the appellant challenged the trial court's exclusion of a film depicting tests performed by her expert witness. The court allowed the expert to testify regarding the tests but prevented the expert from referring to the film or showing the film to the jury. *Id.* On appeal, this court found that the trial court abused its discretion in refusing to admit the film in *Beers* into evidence. *Id.* at 816.

*Beers* is distinguishable from the instant case. Anheuser–Busch overlooks the importance of the facts of each individual case, especially the contents of the film itself. This court in *Beers* made it clear that it was not holding that every film produced under similar circumstances and for similar purposes should be admitted into evidence. *Id.* In *Beers*, this court found that the film would aid the jury in understanding the expert's testimony on

the "physical properties of bumper jacks." *Id.* In the instant case, the trial court did not find that the video tape would aid the jury in understanding Kelsey's testimony.

▪ After viewing the film, this court concurs with the trial court's ruling that the video tape would not have aided the jury, and should have been excluded. Merely because a video tape is being offered for a purpose other than re-creating the accident, its admission is not guaranteed. The court allowed Kelsey to testify as to the tests he performed and the conclusions he reached from those tests. The probative value of the video tape as an aid to Kelsey in explaining his tests is slight and such value is outweighed by the likelihood that the video tape would confuse and mislead the jury. *McPherson Redevelopment Corp. v. Watkins*, 782 S.W.2d 690, 692 (Mo.App.1989). The video tape may be rejected upon a finding that it is not practical, instructive, or calculated to assist the trier of fact in understanding the case. *Id.* The trial court's ruling is not an abuse of its discretion. Point II is denied.

In Point III, Anheuser–Busch claims that the trial court erred in allowing Copp Trucking to repeatedly use leading questions in examining expert witness Bentley. Anheuser–Busch argues that the use of leading questions was improper because Bentley was retained by Copp Trucking and was not an adverse witness.

▪ Whether to allow the use of leading questions in the examination of a witness is within the sound discretion of the trial judge. *Neuhoff Bros. Packers v. Kansas City Dressed Beef Co.*, 340 S.W.2d 193, 196 (Mo.App.1960). The entire subject of the examination of witnesses is committed to the sound discretion of the trial court and the trial court's decision should not be reversed on appeal unless appellant shows prejudice. *Id.*

Anheuser–Busch argues that the use of leading questions is only allowed, besides in cross-examination, in specifically defined situations such as when the witness is adverse, hostile, nervous or excited, or requires assistance in recollection. Anheu-

ser–Busch asserts that Bentley does not fit into any of these categories because even though he was called as a witness by King, he was hired by Copp Trucking.

■ A party to a civil case is entitled to cross-examine a witness who has given evidence against the party. Section 491.070, RSMo 1986. Such party may ask leading questions during cross-examination of the witness. A party is even entitled to ask leading questions of the party's own witness during cross-examination when the witness was called to the stand by the opposing party. *A. Graf Distilling Co. v. Wilson,* 156 S.W. 23, 27 (Mo.App.1913). King called Copp Trucking's witness, Bentley, to the stand so Copp Trucking would normally be entitled to cross-examine him. Anheuser–Busch claims that the general rules do not apply because King and Copp Trucking's interests were aligned under the Mary Carter Agreement.

■ Assuming, arguendo, that the general rule would be inapplicable because Copp Trucking's interests were aligned with King, Anheuser–Busch failed to prove that it was prejudiced by the trial court's decision. Bentley, a highly educated individual, was testifying about complicated technical and scientific data and it is unlikely that such a witness would be influenced by leading questions suggesting answers. *Sheets v. Kurth,* 426 S.W.2d 103, 105 (Mo. 1968). Considering the trial court's substantial discretion and Anheuser–Busch's failure to demonstrate prejudice, there was no error. Point III is denied.

The judgment is affirmed.

All concur.