Charles JOINER and Mary Lynn
Joiner, Appellants,

v.

AUTO–OWNERS MUTUAL INSURANCE
COMPANY, Respondent.

No. WD 46916.

Missouri Court of Appeals,
Western District.

Nov. 22, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 27, 1994.

Application to Transfer Denied
Feb. 21, 1995.

Robert L. Shirkey, Kansas City, for appellants.

R. Frederick Walters, Kansas City, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Charles William Joiner and Mary Lynn Joiner [1] appeal from the trial court's judgment, rendered after a jury trial, denying their claims against Auto–Owners Mutual Insurance Company for proceeds of an insur-

1. At the time of the trial, Ms. Joiner indicated that her name was Mary Elizabeth Scott.

ance policy and damages for Auto–Owners' vexatious refusal to pay when a fire destroyed the Joiners' home. The Joiners raise three points on appeal, contending that the trial court erred (1) in not giving Instruction 36, a written instruction advising the jury that it could consider certain hearsay evidence only on the issue of whether Auto–Owners' refusal to pay was vexatious; (2) in giving Instructions 9, 15, 21, 27, and 33 because those affirmative defense instructions did not require a finding of materiality with regard to the alleged misrepresentation made by the Joiners concerning the origin of the fire; and (3) in giving Instructions 15, 21, 27, and 33 and Instructions 14, 20, 26, and 32 because those instructions constituted an improper multiple submission of the same defenses.[2] The judgment of the trial court is affirmed.

On April 5, 1989, fire destroyed a house owned by the Joiners in Linn Creek, Camden County, Missouri. Prior to the date of the fire, Auto–Owners had issued an insurance policy to the Joiners providing coverage for certain fire loss of the house. After the fire, Auto–Owners did not pay out the proceeds of the insurance policy to the Joiners. Consequently, the Joiners filed suit against Auto–Owners, seeking in their first amended petition $51,150 for the loss of their dwelling, $23,500 for the loss of the contents of the house, $9,300 for their additional living expenses, $5,000 for their efforts in removing debris from the fire, and $13,343 for the vexatious refusal of Auto–Owners to pay the insurance proceeds. Auto–Owners defended the case by asserting the affirmative defenses of arson and misrepresentation.

The case was tried to a jury in June of 1992. The jury found in favor of Auto–Owners on all of the Joiners' claims and the trial court entered judgment for Auto–Owners and against the Joiners. The Joiners now appeal.

## I.

■ As their first point on appeal, the Joiners assert that the trial court erred in

refusing to give an instruction limiting consideration by the jury of certain hearsay evidence to the issue of vexatious refusal. During the trial, there were admitted into evidence several reports compiled by Ken Johnson, the fire cause-and-origin expert hired by Auto–Owners to investigate the Joiners' house fire. The reports of Mr. Johnson included transcribed statements of Maizy Morgan, the aunt of Mr. Joiner, and Barbara Muscia, the daughter of Ms. Joiner, whom Mr. Johnson had interviewed as part of his investigation. Ms. Morgan told Mr. Johnson that about thirty to sixty days before the fire, Mr. Joiner brought some guns to her house and asked to leave them with her "for safe keeping." According to Ms. Morgan, Mr. Joiner often brought items to her house and left them with her "until their problems smoothed out." Ms. Morgan stated that Mr. Joiner had told her at the time he brought the guns to her house, "Mary and I are getting a divorce again."

Ms. Muscia told Mr. Johnson that Ms. Joiner brought her poodle to Ms. Muscia's house and left it there a few days prior to the fire. Ms. Muscia stated that Mr. and Ms. Joiner "couldn't get along about the dog," that Mr. Joiner "kept talking about killing the dog," and that Ms. Joiner brought the dog to Ms. Muscia's house because she "didn't want [Mr. Joiner] hurting it."

The trial court admitted the reports containing the statements of Ms. Morgan and Ms. Muscia over the objections of the Joiners' counsel because the statements were relied upon by Auto–Owners in making its decision not to pay the Joiners' claims. When the report containing Ms. Morgan's statement was admitted into evidence, the trial court instructed the jury as follows:

Thank you. Ladies and Gentlemen of the Jury, there have been objections to Exhibit 55, and they are sustained in part and overruled in part. You may consider the contents of Exhibit 55 and attachments when determining Plaintiffs' claim that De-

---

**2.** The Joiners actually included the improper multiple submission argument pertaining to Instructions 15, 21, 27, and 33 in their second point relied on. Because of the similarity of this argument to the Joiners' contention raised in their third point relied on, this argument will be addressed in point three.

fendant's refusal to pay was without reasonable cause or excuse but not on any other issue.

When the report containing Ms. Muscia's interview with Mr. Johnson was admitted into evidence, the trial court stated to the jury:

> And [counsel for the Joiners] has objected to Exhibit 56 and portions attached.
>
> The objection is sustained in part and overruled in part. You may consider Exhibit 56, and specifically this attachment to which this question refers, when you determine Plaintiff's claim that Defendant's refusal to pay was without reasonable cause or excuse, but not on any other issue. So it's limited to that.

During closing argument, counsel for Auto–Owners referred to the statements made by Ms. Morgan that were included in Mr. Johnson's report:

> [The Joiners] both told us Mary liked the house. We go talk to Charlie Joiner's aunt, Maizy Morgan, and she said Mary hated the house. She didn't want to live there, and had been saying that for a long time. They both tell us they're getting along. We go talk to Maizy Morgan, and remember her voice? I believe the lady. I believe the lady. She said they're getting divorced.
>
> They tell us the guns are going over to Maizy's because of the kids. Maizy tells us—had no reason to lie—Charlie's own aunt—"The guns are over there because they're getting divorced."

The Joiners' attorney interrupted Auto–Owners' closing argument with the following request:

> Excuse me, Your Honor. If you'll forgive me. Your Honor gave a very limited instruction with regard to this kind of evidence, that it was to be used with regard to the vexatious refusal to pay only. That was the instruction the Court repeatedly gave. And I ask now that the Court repeat that instruction to the jury.

After a discussion outside the hearing of the jury, the trial court said, "Let me handle it this way. I'll tell them that they must re-

member the instructions given, and I will tell them that Ms. Morgan's statement was included in that instruction." The attorney for the Joiners responded, "That's fine, Your Honor." The proceedings then returned to open court, and the trial court informed the jury, "Ladies and Gentlemen of the Jury, please remember the instructions that were given during the course of the trial. And the Maizy Morgan statement was given with reference to an instruction limiting the consideration to the refusal."

At the end of the closing arguments but before the case was submitted to the jury, the Joiners tendered Instruction 36, which read as follows:

> You are instructed that the statements of defendant's counsel during closing argument as to statements made by Charles Joiner's aunt Maysia Morgan and Mary Joiner's daughter to Ken Johnson may not be considered by you as proof that those statements were true but may be considered by you only in connection with the claim of the defendant that its refusal to pay was not vexatious and therefore was not liable for the penalty referred to in other instructions.

The trial court declined to submit Instruction 36 to the jury. The Joiners claim that they were entitled to a written, rather than an oral, instruction advising the jury that it was to deem the comments made by Auto–Owners' counsel during closing argument not as proof that the statements were true, but only as a means to determine whether Auto–Owners' refusal to pay the proceeds of the Joiners' insurance policy was vexatious. The Joiners rely on Missouri Supreme Court Rule 70.02(a), which requires that jury instructions be in writing.[3]

Limiting instructions are appropriate when a court admits evidence for one narrow purpose, recognizing that the evidence is inadmissible for all other purposes. *See Goodman v. State Farm Ins. Co.*, 710 S.W.2d 423, 424 (Mo.App.1986). "The opponent then has a right to an instruction if he [or she] should request it limiting the extent to which and the purpose for which the jury may consider

---

3. Rule 70.02 was amended after trial, with the new provisions effective January 1, 1994.

such evidence." *Scott v. Missouri Ins. Co.,* 361 Mo. 51, 59, 233 S.W.2d 660, 665 (en banc 1950) (quoting *State ex rel. Kansas City Public Service Co. v. Shain,* 345 Mo. 543, 549, 134 S.W.2d 58, 61 (1939)).

The court permitted Auto–Owners to introduce the hearsay statements contained in Mr. Johnson's report not for their truth, but for the purpose of defending the Joiners' argument that the insurance company's refusal to pay their claim was vexatious. Clearly the Joiners were entitled to a limiting instruction, which they received when the court, on the three occasions noted herein, orally advised the jury that consideration of the hearsay statements was limited to the issue of vexatious refusal. Whether it was reversible error for the trial court to refuse to give a properly requested written limiting instruction is not reached by this court, because we find the trial court did not abuse its discretion in refusing the limiting instruction since the instruction was not offered during the instruction conference, but was instead tendered after the court had already read the jury its instructions and the parties had completed closing argument.

Supreme Court Rule 70.02 governs instructions to juries. Rule 70.02(a), as of the date of trial, provided that, "Before the case is submitted the court shall call a conference of counsel to consider instructions. Any party may, before the case is submitted, request the court to instruct the jury in writing on the law applicable to the issues." [4] Traditionally, Missouri courts require that a party's request for written instructions be made at the instruction conference, rather than later in the proceedings. Such practice was recognized by the court in *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 750 (Mo.App.1993). The *Dierker* court noted that a litigant normally "cannot complain or predicate error on the failure to give an instruction where such party failed to timely tender and request ... a proposed instruction on the matter ...," while gratuitously noting that such request should be made during the instruction conference. *Id.* The instructions approved for submission are then read to the jury prior to closing arguments.

No Missouri decision has been found which expressly articulates that a trial court in a civil case has discretion to refuse an instruction requested after the conclusion of the instruction conference. Nevertheless, we are persuaded by the rationale adopted by the southern district in a criminal case, in that:

> it seems to be only common sense to hold that such requests must come before or at the instruction conference, which takes place after all of the evidence is in, and before any ... instructions are read to the jury. In that way, the trial court, in calm deliberation, has the opportunity to consider what instructions should be given in light of the evidence that has just been heard.

---

4. Effective January 1, 1994, Rule 70.02 was amended to read:

    (a) **Requests for Instructions.** Any party may, and a party with the burden of proof on an issue shall, submit written requests for instructions on the law applicable to the issues. Requests shall be submitted prior to an instruction conference or at such time as the court directs.

    \*   \*   \*   \*   \*   \*

    (e) **Instructions Conference and Record.** The court shall hold an instructions conference with counsel to determine the instructions to be given. The court shall inform counsel as to the instructions that are to be given prior to the time they are delivered to the jury.

    \*   \*   \*   \*   \*   \*

    (f) **Instructions–How and When Given.**

    \*   \*   \*   \*   \*   \*

    Final instructions in the case, submitting the law applicable to the case, ordinarily should be given prior to final arguments. Instructions that are to be given shall be consecutively numbered and all shall be given as instructions of the court. Except where otherwise provided in Missouri Approved Instructions, they shall be given in such order as the court shall deem advisable. The final instructions on the law governing the case shall be read to the jury by the court and provided to the jury in writing.

*State v. Gifford,* 749 S.W.2d 702, 706 (Mo. App.1988). Following this reasoning, it seems clear that the Joiners did not make a timely request for their written jury instruction. To allow counsel to introduce an instruction:

> after all of the instructions had been read to the jury, ... would result in the trial court withdrawing all instructions it had read to the jury, holding a second instruction conference, and conceivably re-numbering and redrawing instructions previously agreed to by all parties. This would throw a large spike into the gears of the wheel of justice, and would leave juries hopelessly confused in their role as factfinders.

*Id.* The only alternative to this procedure would be for the court to read, in isolation, the untimely instruction to the jury. This option, however, could cast greater emphasis on the new instruction, as opposed to those which had been timely submitted. Therefore, the trial court was within its discretion to refuse an instruction offered after the completion of closing arguments.

The Joiners argue, however, that since the challenged comments occurred during closing argument after the instruction conference had taken place, the Joiners were not aware of the need to proffer a limiting instruction during the instruction conference. When the conference transpired, however, counsel for the Joiners already knew that the hearsay evidence had been admitted and that its improper use was an issue in the case. The event triggering the right to a limiting instruction was the admission of the hearsay evidence, not the improper reference to such evidence in closing argument. The Joiners had sufficient opportunity and information to submit a limiting instruction in the normal course of the trial.

When Auto–Owners improperly referred to the hearsay evidence in closing argument, the trial court had broad discretion in ruling on the Joiners' objection. *Pappas v. Bi–State Development Agency,* 565 S.W.2d 475, 476 (Mo.App.1978). The prejudicial impact of improper closing argument is considered by the trial court when it determines the proper response to such argument, and ap-

pellate courts defer to the trial court's ruling unless there is an abuse of discretion. *Id.* The trial court acted within its discretion in giving an oral limiting instruction during closing argument and refusing the offer of a written limiting instruction after closing argument was concluded. Point one is denied.

## II.

■ The Joiners argue as their second point on appeal that the trial court erred in giving Instructions 9, 15, 21, 27, and 33, because these affirmative defense instructions did not require a finding of materiality with regard to the Joiners' alleged misrepresentation concerning the origin of the fire. The trial court presented the Joiners' claims for consideration by the jury in five separate packages, one package for each type of damage claimed by the Joiners under the insurance policy (loss of dwelling, loss of contents, additional living expenses, debris removal costs, and damage to trees). Auto–Owners originally offered Instruction A to submit its affirmative defense of misrepresentation. The Joiners objected to the instruction and the trial court refused to submit it to the jury. Auto–Owners then substituted Instructions 9, 15, 21, 27 and 33 as misrepresentation affirmative defense instructions, one of which to be submitted in each of the five packages. None of these instructions contained the requirement that the jury find that the misrepresentation made by the Joiners was material.

At the instruction conference, the Joiners objected to the submission of Instructions 9, 15, 21, 27 and 33. In objecting, the Joiners' counsel made only general objections, without stating any grounds. The trial court overruled the objections to the instructions.

In their motion for a new trial and on appeal, the Joiners claim that Instructions 9, 15, 21, 27, and 33 constituted erroneous statements of the law because they did not require the jury to find that the alleged misrepresentation made by the Joiners concerning the origin of the fire was material. In order for a "false swearing" to void an insurance policy, the false swearing must have been willful, made with respect to a material matter, and made with the intent to

deceive the insurer. *Gould v. M.F.A. Mutual Insurance Company*, 331 S.W.2d 663, 669 (Mo.App.1960). Thus, any misrepresentation made by the Joiners would void their policy only if the misrepresentation pertained to a material matter.

Instructions 9, 15, 21, 27, and 33 define "material," but they do not specifically require a finding that the Joiners made a material misrepresentation in order for the jury to find for Auto–Owners on the various claims brought against Auto–Owners by the Joiners. The representation contained in the instructions, though, concerns the statement by the Joiners that the fire did not originate by any act, design, or procurement on the part of either Mr. Joiner or Ms. Joiner. In the Sworn Statement in Proof of Loss sent by the Joiners to Auto–Owners, the Joiners affirmed that "[t]he said loss was not caused by design or procurement on the part of the insured...." This sworn statement was admitted into evidence. The jury heard evidence that Auto–Owners' decision not to pay the proceeds of the Joiners' insurance policy was based on their belief that the Joiners caused or procured the fire loss of their home.

∎ When a particular fact is not treated as a real, disputed question, it is not error for an instruction to assume the uncontroverted fact. *White v. Land Clearance for Redev. Auth.*, 841 S.W.2d 691, 695 (Mo.App. 1992) (citing *Weisman v. Herschend Enterprises, Inc.*, 509 S.W.2d 32, 37 (Mo.1974) ("[I]t is not necessary to hypothesize facts about which there is no dispute....")). If the nature of a misrepresentation is such that all minds would agree that it is or is not material, the materiality of the misrepresentation may be declared as a matter of law. *Continental Cas. Co. v. Maxwell*, 799 S.W.2d 882, 889 (Mo.App.1990).

The materiality of the origin of the fire is obvious. *See Vitale v. Aetna Cas. & Sur. Co.*, 814 F.2d 1242, 1249–50 (8th Cir.1987) (where the Court of Appeals, Eighth Circuit, found that any alleged misrepresentations as to the destruction of insured property by arson and the amount of subsequent business interruption damages were material). Furthermore, the materiality of the origin of the fire and any statements concerning the origin of the fire were never questioned during the trial. When the issue of materiality was undisputed, as a matter of law, it was not essential that such element be included in Instructions 9, 15, 21, 27, and 33.

The trial court did not err in submitting Instructions 9, 15, 21, 27, and 33 to the jury, even though such instructions did not require a finding of materiality. Point two is denied.

### III.

∎ As their third and final point on appeal, the Joiners claim that the trial court erred in submitting Instructions 15, 21, 27, and 33 because those instructions, identical to Instruction 9, constituted improper multiple submissions of Auto–Owners' affirmative defense of misrepresentation contained in Instruction 9. The Joiners also argue that the trial court erred in submitting Instructions 14, 20, 26, and 32 because the submission of those instructions, which were identical to Instruction 8, resulted in an improper multiple submission of the affirmative defense of arson contained in Instruction 8. The Joiners maintain that the multiple instructions were offered for the sole purpose of repeatedly emphasizing to the jury Auto–Owners' defenses of misrepresentation and arson. They contend that Auto–Owners "could have submitted its alleged defenses ... in one or two instructions at the most."

The Joiners claimed five separate types of damages against Auto–Owners, (1) the loss of their dwelling, (2) the loss of personal property, (3) additional living expenses, (4) debris removal costs, and (5) damage to trees. The trial court submitted the Joiners' claims to the jury by a set of five general instructions and then five separate packages, one package for each damage claim submitted by the Joiners under the insurance policy. Each package began with MAI 2.05 [1980 New], designating which damage claim was addressed in the package and which instructions applied to the damage claim. Each package also contained a verdict form for the damage claim. Both of the Auto–Owners' affirmative defenses were submitted once in each of the five packages.

The packaging of jury instructions is designed to simplify the submission of complex cases. *Howard Const. v. Teddy Woods Const.*, 817 S.W.2d 556, 562 (Mo.App.1991). "The packaging requirement means that except for the general instructions given in all civil cases, *all* the instructions needed to resolve a particular claim are to be packaged together, so that each package is in fact a separate unit." *Johnston v. Allis–Chalmers Corp.*, 736 S.W.2d 544, 546 (Mo.App.1987). Instructions are to be "packaged" in accordance with MAI 2.00 "in all cases having more than one verdict form." MAI 2.00(B) [1981 Revision].

Packaging is within the discretion of the trial court. *Howard*, 817 S.W.2d at 562. As stated in MAI 2.00(E) [1981 Revision], "[i]t will be up to the trial judge to determine the basis for 'packaging' of a complex case so that the overall instructions will present the case to the jury in a manner which will best allow them to consider all of the issues in the case in an organized, understandable, and comprehensive manner."

The Joiners do not contend that the trial court should not have packaged each damage claim separately. They merely claim that it was improper to include instructions on Auto–Owners' affirmative defenses in each package. Therefore, it is unnecessary for this court to decide whether the trial court erred in packaging instructions for each damage claim separately.

Since the trial court packaged each damage claim separately, the trial court's decision to include the affirmative defenses of Auto–Owners in each package was correct. Separate packaging of each of the Joiners' damage claims seemingly requires that Auto–Owners' affirmative defenses be included in each package in order to make each package a separate unit, since the affirmative defenses must be considered in the resolution of each claim. *See Johnston*, 736 S.W.2d at 546. Even if the trial court was not required to submit each affirmative defense in each package, it was up to the trial court to organize the instructions so that the jury could consider the issues in an "organized, under-standable, and comprehensive manner." MAI 2.00(E) [1981 Revision].

In addition, instructional error is a basis for reversal only when substantial prejudice is shown. *Id.* at 547. The Joiners failed to object when the trial court proposed to submit the five packaging instructions, which listed all the instructions to be incorporated in each package, including the affirmative defenses. The Joiners made only general, nonspecific objections to Instructions 15, 21, 27, and 33 and Instructions 14, 20, 26, and 32. As this court has noted, "[c]ounsel is reminded that one who considered that a proposed instruction may confuse the jury or affect his presentation adversely had the opportunity to suggest modification or to submit alternatives at the instruction conference." *Sharaga v. Auto Owners Mut. Ins. Co.*, 831 S.W.2d 248, 254 (Mo.App.1992). While objection at the time the instruction is proposed is not necessary to preserve error at the time this case was tried, *id.;* Rule 70.03,[5] the failure to object at trial may be considered in assessing the prejudicial effect of the instruction, for "[a] jury is not likely to be misled by an alleged defect in an instruction when the defect was not readily apparent to trial counsel." *Dierker*, 859 S.W.2d at 744.

The Joiners have not shown that the submission of Instructions 15, 21, 27, and 33 and Instructions 14, 20, 26, and 32 was error or that they were prejudiced by the giving of such instructions. The Joiners' citation to *Cornell v. Texaco, Inc.*, 712 S.W.2d 680 (Mo. banc 1986); *Nugent v. Hamilton & Son, Inc.*, 417 S.W.2d 939 (Mo.1967); and *Beers v. Western Auto Supply Co.*, 646 S.W.2d 812 (Mo.App.1982), does not support their claim that the submission of these instructions mandates a reversal. *Nugent* and *Beers* are distinguishable from the instant case in that the cases do not involve the packaging of instructions, and the repetitive instructions in those two cases were in violation of express provisions in MAI. *Nugent*, 417 S.W.2d at 941 (violation of MAI 29.01 to give three converse instructions in response to a single verdict director); *Beers*, 646 S.W.2d at 814–15 (the two contributory fault instructions

---

5. It is noted that, as of January 1, 1994, Rule 70.03 requires that objections to instructions be made prior to the jury retiring to deliberate to preserve error for appeal.

given by each defendant were in violation of MAI 32.23, which required a single contributory fault instruction when both design defect and failure to warn were submitted as strict liability theories of recovery).

Nor is *Cornell* helpful to the Joiners. The *Cornell* court held that there should only be one comparative fault instruction because the negligence of the plaintiff should be compared with the cumulative negligence of all defendants. *Cornell,* 712 S.W.2d at 682. There being no error in the submission of Auto–Owners' affirmative defense instructions in each of the five packages, point three is denied.

The judgment of the trial court is affirmed.

All concur.