Jason Travis **FELTON** and Mary K. Felton, Appellants,

v.

Jerry **HULSER**, Respondent.

No. WD 53515.

Missouri Court of Appeals, Western District.

Oct. 28, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1997.

Application for Transfer Denied Jan. 27, 1998.

---

Ron L. Findley, St. Joseph, for Appellants.

Keith W. Ferguson, St. Joseph, for Respondent.

Before EDWIN H. SMITH, P.J., and ULRICH, C.J., and ELLIS, J.

EDWIN H. SMITH, Presiding Judge.

Jason T. Felton and his mother, Mary K. Felton, appeal from the circuit court's judgment awarding him $2,000 in damages on his claim for personal injuries and awarding her $445 in damages on her claim for property damage to her motor vehicle.

Appellants assert two points on appeal. In their first point, they claim that the trial

court abused its discretion when it refused to allow them to read to the jury respondent's Rule 59.01 admissions. In their second point, they claim that the trial court erred in overruling their objection to respondent's alleged violation of the trial court's order *in limine*.

We reverse and remand.

### Facts

On June 6, 1994, Jason T. Felton, appellant, and Jerry Hulser, respondent, were involved in an automobile collision on Twenty–Second and Duncan Streets in St. Joseph, Missouri. At the time of the accident, Mr. Felton was driving a 1985 Ford Tempo owned by his mother, Mary K. Felton. Mr. Felton was stopped at the intersection to make a left turn when respondent's car collided with the rear of Mr. Felton's car. Mr. Felton did not realize that he had sustained any injuries until after he had left the accident scene.

The following day, Mr. Felton went to Dr. Larry J. Lovejoy, a chiropractor, who told him that he suffered from a cervical strain/ sprain to the muscles and soft tissues. At trial, Dr. Lovejoy testified that the motor vehicle accident produced these injuries and would result in limitations on Mr. Felton's occupation and recreational activities for the rest of his life. After filing suit, appellants served respondent with a request for admissions, which contained thirty-one (31) separate requests covering a variety of facts related to respondent's liability and appellants' damages. During appellants' case-in-chief, their trial counsel requested leave to read the requests for admissions. Respondent objected to appellants' request. The trial court ruled that the respondent's pretrial admissions could be used only to impeach him if he testified inconsistently with his admissions.

At trial, appellants filed a motion *in limine* asking that respondent's counsel be instructed "to refrain from making any mention or interrogation, directly or indirectly ... [t]hat [Mr. Felton's] physicians and [Mr. Felton's] counsel have, have had or will have common patients/client[s] other than [Mr. Felton].... " The trial court, in ruling that respondent could not question Dr. Lovejoy

regarding his prior testimony for other plaintiffs, including plaintiffs that appellants' counsel represented, found that these issues may be relevant to show bias or prejudice of Dr. Lovejoy, but the potential prejudice of such testimony far outweighed any probative value. During trial, respondent's counsel asked whether Dr. Lovejoy had ever dealt with appellants' counsel before. He responded that he had. Appellants' counsel requested permission to approach the bench, which was denied. He later informed the court of his objection concerning this question in that it violated the motion *in limine*.

The jury returned a verdict for Mr. Felton on his personal injury claim in the amount of $2,500 and for Ms. Felton for $500 on her claim for property damage. The jury assessed 20% fault against Mr. Felton and 80% fault against respondent. After reducing the verdicts for the appellants by the 20% fault assessed to Mr. Felton, the circuit court entered judgment for Mr. Felton in the amount of $2,000 and for Ms. Felton in the amount of $445.

This appeal follows.

### I.

In their first point, appellants claim that the trial court abused its discretion when it refused to allow them to read to the jury the respondent's admissions made pursuant to Rule 59.01. Appellants contend that they had the right to read respondent's admissions under the rule, and that the trial court lacked any valid basis for denying their request. Appellants further contend that the improper denial of their request prejudiced them by requiring them to introduce evidence regarding facts already admitted to by the respondent, and forcing them to use a different and less effective mechanism, live testimony, to present the evidence in their case. Respondent argues that the trial court did not abuse its discretion in that it only forbade appellants' counsel from reading the admissions to the jury at the specific time requested, but did not preclude the reading of the admissions at some future time. Moreover, respondent argues that even if the trial court did err in denying appellants' re-

quest to read respondent's admissions, they were not prejudiced by the error.

Rule 59.01, governing admissions, does not specifically address their reading to the jury, nor can we find any case law that addresses this precise issue. In what appears to be a case of first impression in this state, the issue we must decide is whether a party has the right to read to the jury a party-opponent's Rule 59.01 admissions, not otherwise subject to valid objection.

 Decisions of a trial court regarding the admissibility of evidence are given substantial deference on appeal and will only be disturbed upon a finding that the trial court has abused its discretion. *King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307 (Mo.App. 1993) (citations omitted). Thus, our review here is for an abuse of discretion. The Supreme Court of Missouri has described our review of a ruling for an abuse of discretion as follows: "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration...." *Id.* Rulings made within the trial court's discretion are presumed correct and the appellants have the burden of showing that the trial court abused its discretion. *Id.*

Rule 59.01 governs the "Request for and Effect of Admissions." There is no dispute that the admissions of respondent in question here were properly obtained by the appellants under the rule. The sole dispute centers around whether appellants had a right to read respondent's admissions to the jury when they requested. Although, as stated, *supra*, the rule does not provide for when an admission under the rule may be read to the jury, it does provide the purpose and effect of admissions.

 Rule 59.01(c), in pertinent part, states that "[a]ny matter admitted under this [rule] is conclusively established unless the court on motion permits withdrawal or amendment of the admission." "A request for admissions, as authorized by Rule 59.01(a), is designed to remove an issue from trial or to determine which pleaded matters present genuine issues for trial." *N.R. v.*

*A.D.*, 655 S.W.2d 733, 735 (Mo.App.1983) (citing *Linde v. Kilbourne*, 543 S.W.2d 543 (Mo.App.1976)). The purpose of the rule " '... is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial.' " *N.R.*, 655 S.W.2d at 735 (analogy between Federal Rules of Civil Procedure 36 and Rule 59.01) (citations omitted). To serve this function, the rule accords conclusiveness to admissions so that a party may rely on the fact that the admission binds the party addressed, unless the court permits withdrawal or amendment of the admission. *N.R.*, 655 S.W.2d at 735; *Killian Const. Co. v. Tri-City Const. Co.*, 693 S.W.2d 819, 827 (Mo.App.1985) (citations omitted). A party need not produce any further proof regarding facts admitted. *Killian Const. Co.*, 693 S.W.2d at 827.

 Because Rule 59.01 does not specifically address the issue in question here, it must be interpreted for its intent. The same principles of construction are used in interpreting statutes and rules. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App. 1996) (citations omitted). The primary rule of statutory construction is to ascertain the intent from the language used and to give effect to that intent if possible. *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). When interpreting a rule, the court should apply the plain and ordinary meaning of the rule as written. *Sloan v. Director of Revenue*, 900 S.W.2d 256, 257 (Mo.App.1995).

 Since, as discussed, *supra*, the purpose of admissions is to narrow the range of issues for trial and relieve a party from producing any further proof regarding those facts, Rule 59.01 logically contemplates that the jury will be made aware of party admissions by introducing them into evidence in some fashion. "Rule 59.01 intends to allow admissions of all disputed issues, whether evidentiary or elements of the burden of proof; that all propositions not in genuine dispute—whether a matter of application of fact to law or opinion—should be admitted." *Linde,* 543 S.W.2d at 546. Where, as here, an issue has not been removed from the jury's determination by stipulation, the only

way to make the jury aware of admissions is to read them. This is consistent with the logic used in Rule 57.07, concerning the use of admissions by party-opponents made in depositions.

■ Rule 57.07(a)(2) states that the deposition of a party "may be used by an adverse party for any purpose." "A statement made in a deposition relevant to the issues may be admitted against the deponent as admissions against interest ... even though he is present in court and able to testify, or has testified." *Parker v. Bruner*, 686 S.W.2d 483, 486 (Mo.App.1984). Thus, just as in the case of depositions, we conclude that a party has the right to introduce admissions into evidence by reading them to the jury, unless there exists a valid objection for not doing so.[1] Having held that a party has the right to introduce admissions by reading them to the jury, unless otherwise objectionable, we will now address whether there existed a valid basis here for denying appellants' request to read respondent's admissions.

■ When appellants' counsel requested leave to read respondent's admissions, respondent objected. In this regard, respondent's trial counsel stated:

> I would object to [appellants' trial counsel] simply standing up here and reading the admissions. If he wants to call Mr. Hulser as a witness and Mr. Hulser testified inconsistently with these admissions, I think these can be used to impeach him. But, Judge, just to stand up and start reading the admissions, I think, is improper and, as a matter of fact, it's hearsay because it's an out-of-court statement.

Although respondent's trial counsel initially objected that the reading of the admissions would be hearsay, he did not renew this argument on appeal. Obviously, there existed no valid hearsay objection to the reading of admissions of a party-opponent. As to respondent's trial counsel's statement concerning impeachment, counsel acknowledged

during his oral argument that the use of an admission is not predicated upon establishing an inconsistency between a party's admission and his or her live testimony. However, it appears the trial court shared respondent's trial counsel's initial belief that an inconsistency between the respondent's live testimony and his admissions had to be established before the admissions could be read. In that regard, the trial court stated:

> Mr. Hulser is here to testify. You can call him. And if he says anything inconsistent, then I don't have a problem with you coming back after his testimony and asking to read any of those admissions. But it appears to me these are basic admissions that he's going to have to testify to ....

There is nothing in the rule that requires that an inconsistency be shown between the party's admission and the party's live testimony before an admission can be introduced into evidence.[2] Thus, the lack of an existing inconsistency between respondent's live testimony and his admissions was not a valid basis for the trial court here to have refused appellants' request to read respondent's admissions to the jury.

Although the respondent did not specifically object to the reading of the admissions on the basis that it would be cumulative of respondent's anticipated live testimony, the trial court nonetheless expressed such a concern. As to this issue, the trial court stated: "I assume those are all matters that you are going to be asking [respondent] when he is testifying from the witness stand. So I'm not going to allow you to read the request for admissions at this time." However, when appellants requested to read the admissions to the jury, the respondent had obviously not yet testified. Logically then, the reading of respondent's admissions at that time would not have been a redundant recitation of his live testimony and was not subject to objection on this basis. The trial court was simply anticipating what might happen and was dictating to appellants' counsel the manner in

---

1. Respondent's counsel admitted during oral argument that a party is entitled to read the party-opponent's admissions to the jury, unless otherwise objectionable.

2. During oral argument, respondent's counsel acknowledged that the use of an admission is not predicated upon the existence of an inconsistency between a party's admission and his or her live testimony.

which he was required to present his evidence. The trial court, apparently operating under the mistaken belief that if a witness was present to testify in person, he or she must do so in lieu of reading his or her admissions, essentially was forcing appellants' counsel to conduct a live examination of respondent before determining whether to allow him to read his admissions.

No valid objection that the reading of the admissions was cumulative of other testimony existed at the time appellants' counsel requested leave to read the admissions to the jury. As a consequence, the trial court, in light of its concern, should have given counsel the option of either (1) reading the admissions at that time, while warning him that he would be subject to later objection that the questions during respondent's live testimony had already been asked and answered pursuant to the reading of the admissions; or (2) examining respondent first, and then requesting that matters not covered in his live testimony be presented by a reading of the applicable admissions to the jury. The trial court did not give counsel this option.

In deciding the issue presented, we hold that where no valid objection lies to the reading of Rule 59.01 admissions, such as here, trial counsel should be permitted to read to the jury a party-opponent's Rule 59.01 admissions at such time as he or she deems most advantageous to the client's case. Many times, it is the timing and the manner of presentation of evidence which is critical and vital to the outcome of a litigant's case. As such, decisions as to these matters are better left and should be left to the judgment of trial counsel, who is an advocate for his or her client. Thus, because here we find that there was no valid basis for refusing appellants' request to read respondent's Rule 59.01 admissions, we hold that the trial court, in denying their request, was acting arbitrarily and unreasonably and abused its discretion.

 Even though the trial court abused its discretion in denying the appellants' request to read the respondent's admissions to the jury, we cannot reverse the judgment unless we find that the error materially affected the merits of the action. Rule

84.13; *Nachtweih v. Maravilla*, 861 S.W.2d 164, 169 (Mo.App.1993). The erroneous exclusion of evidence is harmless, and the party suffers no prejudice if the same facts are shown by other evidence. *Around the World Importing v. Mercantile*, 795 S.W.2d 85, 89 (Mo.App.1990); *Nugent v. Owens–Corning Fiberglas, Inc.*, 925 S.W.2d 925 (Mo.App. 1996) (citations omitted). However, "[t]he presence of other evidence of the same general character may not render the error harmless where the excluded evidence goes to the heart of the proponent's case." *State ex rel. Mo. Hwy. and Transportation Comm'n v. Pedroley*, 873 S.W.2d 949, 954 (Mo.App.1994) (citations omitted). "Evidence should not be rejected as cumulative when it goes to the very root of the matter in controversy . . . ." *Kummer v. Cruz*, 752 S.W.2d 801, 808 (Mo.App.1988).

Here, respondent argues that even if the trial court abused its discretion in denying appellants' request to read respondent's admissions to the jury, no prejudice occurred in that the same information, as contained in respondent's admissions, was presented through respondent's live testimony. A review of the transcript would indicate that, for the most part, this is a correct assertion. However, as we discussed, *supra*, the mere fact that evidence is cumulative does not mean that its exclusion is not prejudicial if it goes to the very root of the matter in controversy. *Id.* Such is the case here.

Pursuant to appellants' request for admissions number (30), respondent was deemed to have admitted that:

[o]n the date and at the time of the occurrence mentioned in Plaintiff's Petition herein, Plaintiff had the right and obligation to stop in traffic and wait for motor vehicles to clear the intersection prior to making a left or east bound turn.

This evidence was relevant at trial to establish respondent's fault and lack of fault by Mr. Felton. However, at trial, because the trial court refused to allow appellants' counsel to read respondent's admissions as requested, counsel was forced to inquire about this matter during respondent's live testimony or, given the trial court's previous statements and rulings on the issue, run the risk of being denied the right to present this

evidence to the jury by way of admissions. In this regard, appellants' counsel asked: "[Mr. Felton] would have had to have waited for any traffic coming from the opposite direction to clear before he made his left turn onto Duncan?" Respondent answered, "[y]es, sir, he would have." We find the impact on the jury of respondent's admission, as opposed to his live testimony, was critical to appellants' case on the issue of the assessment of fault.

Admission number (30) specifically acknowledged Mr. Felton's right to be stopped in traffic when the accident occurred. On the other hand, respondent's live testimony was somewhat equivocal on that issue. If the jury had heard the specific language used in the admission, as opposed to the live testimony of respondent, it is reasonable to infer that they most likely would not have assessed 20% fault to Mr. Felton. In fact, if the admission in question had been read and admitted, the appellants could have moved for a directed verdict as to fault, removing the issue altogether from the consideration of the jury. In any event, the admission in question here clearly goes to the very root of the matter in controversy and would not be considered merely cumulative. *Id.* Thus, we find that appellants were prejudiced by the trial court's denial of their request to read the respondent's admissions to the jury, and, as such, it constituted reversible error.

Because our resolution of appellants' first point is dispositive of their appeal, we need not address their second point.

### Conclusion

The judgment of the circuit court is reversed and the cause remanded for a new trial.

All concur.